**In re DOCTORS HOSPITAL 1997, L.P., Debtor.**

**Charles R. Veldekens, Ashraf Veldekens, and Tidwell Properties, Inc., Plaintiffs,**

v.

**GE HFS Holdings, Inc., et al., Defendants.**

**Bankruptcy No. 05–35291. Adversary No. 05–3772.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Oct. 5, 2006.

---

Robert Smith Blanc, Gardere Wynne Sewell & Riggs, John F. Higgins, IV, James Matthew Vaughn, Joshua Walton Wolfshohl, Porter & Hedges LLP, Houston, TX, for Debtor.

R. Paul Yetter, Shawn M. Bates and Janet Guggemos Garza, Yetter & Warden, L.L.P., Houston, TX, John J. Dawson and Robert P. Harris, Quarles & Brady Steich Lang, L.L.P., Phoenix, AZ, Preston T. Towber, Goforth, Lewis, Sanford, Wilson, L.L.P., Houston, TX, for GE HFS Holdings.

Gregg S. Weinberg and Charioty I. James, Barker, Lyman, Twining, Weinberg & Ferrell, Houston, TX, for Newbanks, Inc.

John D. Charbonnet, Jr., Kochman, Donati & Charbonnet, L.L.P., Houston, TX, for Clifton D. Thomason.

Jeffery B. Kaiser, Kaiser & Ahmed, L.L.P., Houston, TX, for Charles & Ashraf Veldekens and Tidwell Properties.

**MEMORANDUM OPINION ON CHARLES VELDEKENS, ASHRAF VELDEKENS, AND TIDWELL PROPERTIES, INC'S AMENDED MOTION TO ABSTAIN AND TO REMAND AND, ALTERNATIVELY, FOR A RECOMMENDATION FOR THE WITHDRAWAL OF THE REFERRAL ORDER REFERRING THIS CASE TO BANKRUPTCY COURT BY THE UNITED STATES DISTRICT COURT**

JEFF BOHM, Bankruptcy Judge.

## I. INTRODUCTION

This adversary proceeding considers whether a bankruptcy court loses jurisdiction over a pending lawsuit, which was filed prior to the date of plan confirmation, upon confirmation of the plan. Stated differently: Is jurisdiction automatically extinguished upon confirmation of a plan? This Court believes the answer is in the negative. Assuming that this Court does have subject matter jurisdiction, the Plaintiffs nevertheless request this Court to abstain from adjudicating the dispute and to remand the suit to a Texas state court. The Court finds that it should not abstain and remand, but rather keep the suit and adjudicate the disputes. The purpose of this Memorandum Opinion is to explain how this Court has arrived at these conclusions.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the right to make any additional findings and conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as determined from the record, in chronological order, are as follows:

## A. Factual background

1. Plaintiffs Charles Veldekens (Mr. Veldekens) and Dr. Ashraf Veldekens (Dr. Veldekens) owned land located at 510 West Tidwell Road in Houston, Harris County, Texas and certain improvements on the land, including a hospital facility (all of which property and improvements are hereinafter collectively referred to as the Tidwell Property). [Docket No. 12, ¶ 13.] [1]

2. Mr. Veldekens and Dr. Veldekens purchased the Tidwell Property in 1992 for $7.3 million. [Docket No 63, p. 11:1–3.]

3. On or about January 23, 1998, Mr. Veldekens and Dr. Veldekens entered into a Lease Agreement with Doctors Hospital 1997, L.P. (the Debtor), whereby they leased the Tidwell Property to the Debtor. [Docket No. 63, p. 2:8–14, 18–19; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 1.] The Debtor is a Limited Partnership based in Houston, Texas that was founded in January of 1998 for the purpose of leasing and operating the hospital facility located on the Tidwell Property in north Houston. [Docket No. 6, ¶ 6.]

4. On or about May 18, 1998, the governing board of the Debtor held its monthly meeting, which was attended by Mr. Veldekens, among others. [Docket No. 63, p. 6:6–9; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Defs' Ex. 44A, p. 1.] John Styles, Jr. (Styles), a member of the governing board, provided an update on the ongoing construction and renovations at the Tidwell Property. [Docket No. 63, p. 6:6–9; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Defs' Ex. 44A, p. 1–2.] Additionally, Styles signed the Lease Agreement in his capacity as President of HealthPlus Corporation under the section in the Lease Agreement that states: "IN WITNESS WHEREOF, HealthPlus Corporation, a Delaware corporation, which owns all of the outstanding capital stock of North Houston HealthPlus, L.L.C., the general partner of [the Debtor], by its signature below joins herein for the purpose of agreeing to and acknowledging the representations and covenants applicable to it or made by it in this Lease." [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 1, p. 39.]

5. On or about June 10, 1998, Mr. Veldekens attended another monthly meeting of the Debtor's governing board. [Docket No. 63, p. 6:13–16; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Defs' Ex. 44B, p. 1.] Styles provided an update of the ongoing construction and renovations on the Tidwell Property and expressed concern about problems that the Debtor was experiencing with the Veldekens. [Docket No. 63, p. 6:21–24; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Defs' Ex. 44B, p. 1, part III.] Specifically, the minutes of the June 10, 1998 meeting reflect that Styles reported that the Debtor was "[a]ttempting to put the Professional Office Building to bed," and that "[w]e are fully prepared to change plans and build on the land we own across the street if the issues of land for the proposed cannot be resolved with the Veldekens in the next few days." [Docket No. 63, pp. 6:24–25, 7:1–4; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Defs' Ex. 44B, p. 1, part III(A)(8).]

---

1. Unless otherwise noted, Docket No. references are to the Docket in Adversary Proceeding Number 05–3772.

6. On or about July 27, 1998, the Debtor borrowed $7 million from HCFP Funding II, Inc. (the Loan) pursuant to a Loan Agreement. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 12.] Defendant, GE HFS Holdings, Inc. (GE) was the most recent holder and owner of the Loan Agreement and all other instruments at issue in this Adversary Proceeding. [Docket No. 63, p. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

7. On or about July 27, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the Assignment of Leases, Rents and Profits in favor of HCFP Funding II, Inc. [Docket No. 63, p. 3:3–6; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 3.]

8. On or about July 27, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed a Deed of Trust and Security Agreement for the benefit of HCFP Funding II, Inc. [Docket No. 63, p. 3:7–11; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 4.] GE was the most recent holder and owner of the Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

9. On or about July 27, 1998, Mr. Veldekens and Dr. Veldekens, as guarantors, also executed a Limited Guaranty Agreement with HCFP Funding II, Inc. [Docket No. 63, pp. 2:15–18, 3:24–25, 4:1–2; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 2.], which specifies the following:

D. The proceeds from the Loan shall be used by [the Debtor] to construct new improvements on, and substantially renovate existing improvements on, the Facility and upon [the Tidwell Property], and therefore [Mr. Veldekens and Dr. Veldekens], as owner of the fee simple interest in the Property, will receive substantial benefits and increase in the value of its property from the making of the Loan to the [the Debtor].

E. In consideration of the benefits to be received by the [Mr. Veldekens and Dr. Veldekens] by the making of the Loan to the [the Debtor] and subject to the express limitation on personal liability set forth in Section 22, the [Mr. Veldekens and Dr. Veldekens have] agreed to execute and deliver to [HCFP Funding II, Inc.] this Guaranty.

[Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 2, Recitals D, E.] GE was the most recent holder and owner of the Limited Guaranty Agreement. [Docket No. 63, pp. 2:21–24, 8:25, 9:1–6.]

10. On or about November 6, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the First Amendment to Deed of Trust and Security Agreement for the benefit of HCFP Funding II, Inc. [Docket No. 63, p. 3:12–15; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 5.] GE was the most recent holder and owner of the First Amendment to Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

11. On or about December 22, 1999, Mr. Veldekens, Dr. Veldekens and the Debtor executed the Second Amendment to Deed of Trust and Security Agreement for the benefit of Heller Healthcare Finance, Inc. [Docket No. 63, p. 3:16–19; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 6.] Heller Healthcare Finance, Inc. was the successor to HCFP Funding II, Inc. and became the holder of the instruments HCFP Funding II, Inc. originally held. [Docket

No. 63, p. 3:19–23; *see* Docket 71, Ex. 2, ¶ 11.] GE was the most recent holder and owner of the Second Amendment to Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

12. Since purchasing the Tidwell Property in 1992 for $7.3 million, Mr. Veldekens and Dr. Veldekens received income therefrom in the form of lease payments from the Debtor and fees from sitting on the governing board, among other income. [Docket No. 63, p. 11:1–6.] The amount of income that they received totaled approximately $10.3 million. [Docket No. 63, p. 11:6–8.]

13. Mr. Veldekens and Dr. Veldekens transferred title to the Tidwell Property to Plaintiff Tidwell Properties, Inc. by a warranty deed filed in Harris County, Texas on December 26, 2002. [Docket No. 12, ¶ 13.] Pursuant to Federal Rule of Evidence 201(a), (b), and (c),[2] this Court takes judicial notice of the Texas Secretary of State Business Organization records, which indicate that Mr. Veldekens is the registered agent and sole officer and director of Tidwell Properties, Inc.

### B. Procedural background

14. On April 6, 2005, the Debtor filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. [Main Case No. 05–35291; Docket No. 1.]

15. On August 19, 2005, Mr. Veldekens, Dr. Veldekens, and Tidwell Properties, Inc. (collectively, the Veldekens) filed suit against GE in the 334th Judicial District of Harris County, Texas (the State Court Lawsuit). [Docket No. 71, Attach. 4.] The Original Petition in this State Court Lawsuit alleged that: (1) the Veldekens had leased the Tidwell Property to the Debtor; (2) the Debtor's lenders [3] had agreed to issue loans to the Debtor solely for the construction of improvements on the Tidwell Property; (3) GE is a Delaware corporation [4] doing business in Texas which acquired the Debtor's lenders; (4) the Veldekens had agreed to grant the Debtor's lenders a lien upon the Tidwell Property only to the extent that the lenders extended loans to the Debtor for improvements on the Tidwell Property; and (5) the lenders made loans to the Debtor for purposes other than the construction of improvements on the Tidwell Property, thereby encumbering the Veldekens' fee simple interest in the property with liens related to loans "for purposes totally unrelated to improving the Tidwell Property, including pur-

---

2. The Federal Rules of Evidence apply to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 1101(a), (b).

3. The Veldekens' suit alleged that the Debtor's lenders were Heller Healthcare Finance, Inc. and HCFP Funding, Inc., a/k/a HCFP Funding II, Inc. [Docket No. 71, Ex. 2, ¶ 11.]

4. The Veldekens' Original Petition alleges that GE "is, based on knowledge and belief, a Delaware Corporation doing business in Texas." [Docket No. 6, Ex. 7, ¶ 6.] Pursuant to Federal Rule of Evidence 201(a), (b), and (c), this Court takes judicial notice of the Texas Secretary of State Business Organization records, which indicate that GE is a Connecticut Corporation, with "Jurisdiction" in "DE/USA."

chasing a separate hospital facility on a different property not owned by the [Veldekens]." [*Id.* at ¶¶ 6, 9, 11, 13, 14.]

16. The State Court Lawsuit sought relief under the following causes of action: breach of contract, suit to remedy cloud/suit to quiet title, fraudulent inducement, fraud, and negligent misrepresentation. [*Id.* at ¶¶ 15–53.] The State Court Lawsuit also sought damages, exemplary damages, attorneys' fees, and the following declaratory relief: (1) "to have the [Tidwell] Property immediately delivered back to [the Veldekens'] possession;" (2) "to have the cloud on [the Veldekens'] title created by the alleged liens on their interest in the [Tidwell] Property vacated and cancelled;" and (3) "If possession of the [Tidwell] Property is not immediately delivered back to [the Veldekens] and the cloud on [the Veldekens'] title created by Heller/GE's alleged lien is not remedied, then [the Veldekens] seek to disgorge from Heller/GE's unjust enrichment, either through a return of the Loans that [the Debtor] unjustly received or a constructive trust placed upon any interest Heller/GE has in the [Tidwell] Property." [*Id.* at ¶¶ 54–58.]

17. On September 30, 2005, GE removed the State Court Lawsuit to the United States District Court for the Southern District of Texas, Houston Division (the District Court), where it was assigned Civil Action No. 4:05–cv–03381 and assigned to the Honorable Vanessa D. Gilmore, United States District Judge. [Civil Action No. 4:05–cv–03381, Docket No. 1.]

18. In a letter to Mr. Veldekens and Dr. Veldekens dated October 7, 2005, GE demanded payment of $15,540,000.00 in indebtedness under the documents executed on July 27, 1998. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 18; Docket No. 6, Ex. 11.] The letter also included a Notice of Substitute Trustee's Sale, which set forth that: (1) the Veldekens granted liens pursuant to the Deed of Trust to "secure a Limited Guaranty Agreement . . . dated as of July 27, 1998, executed jointly and severally by [the Veldekens] to secure indebtedness (the 'Debt');" (2) GE was the current owner of the liens; and (3) "default has occurred in the payment of the Debt," which had matured, so that GE "authorized and directed the Substitute Trustee to file, post and mail this Notice of Substitute Trustee's Sale and to sell the Property and apply the proceeds against the Debt, as provided in the [Limited] Guaranty [Agreement]." The letter and the Notice of Substitute Trustee's Sale indicated that the sale would occur on November 1, 2005. *Id.*

19. On October 14, 2005, the Veldekens and GE jointly filed the following motion in the removed suit (bearing Civil Action No. 4:05–cv–03381) pending before District Judge Gilmore: Agreed Motion for Referral to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the Agreed Motion for Referral). [Docket No. 104, Ex. A.] This Agreed Motion for Referral made the following representations to District Judge Gilmore:

Plaintiffs Charles R. Veldekens, Ashraf Veldekens, and Tidwell Properties,

Inc. ("Plaintiffs") and defendant GE HFS Holdings, Inc. ("GE HFS"), formerly known as Heller Healthcare Finance, Inc. and, before that, HCFP Funding, Inc., and the successor in interest to HCFP Funding II, Inc., *jointly move the Court to refer this case to the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.*

. . . .

*Both parties now move the Court to refer this case to the Bankruptcy Court, which is familiar with the dispute at issue.*

2. Currently pending before the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (Bohm, J.) (the "Bankruptcy Court") is a Chapter 11 bankruptcy, Cause No. 05–35291–H4–11, styles *In re Doctors Hospital 1997, L.P.* Doctors Hospital 1997, L.P. is the lessee of the real property which is the subject of this case. Further, already pending in Bankruptcy Court is Adversary Proceeding No. 05–3315, in which the Plaintiffs assert claims similar to the ones Plaintiffs brought in this matter. *The parties agree that the Bankruptcy Court is the appropriate forum to resolve the parties' dispute.*

3. *The parties agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final orders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court.*

*Id.* (emphasis added).

20. On October 18, 2005, District Judge Gilmore signed an agreed order referring the suit (Civil Action No. 4:05–cv–3381) to the Bankruptcy Court. [Docket No. 1.] This order (the Referral Order) was entered on the docket on October 19, 2005. *Id.*

21. Upon referral of this suit from the District Court to this Court, the Clerk of Court assigned this suit Adversary Proceeding No. 05–3772 (the Adversary Proceeding).

22. On October 31, 2005, the Veldekens filed their Verified Emergency Application for Temporary Restraining Order and Preliminary Injunction, requesting that this Bankruptcy Court enjoin the foreclosure sale of the Tidwell Property scheduled for November 1, 2005. [Docket No. 6, ¶ 39.]

23. On November 1, 2005, the parties appeared before this Court and announced that GE had agreed to remove posting of the notice of the November 1, 2005 foreclosure sale of the Tidwell Property; the Veldekens had agreed to pass on their request for a Temporary Restraining Order hearing; GE would be entitled to repost the Tidwell Property for a foreclosure sale in December of 2005; and the parties wanted the Court to set a hearing on the Veldekens' Application for Preliminary Injunction at the end of November. [Docket Entry Nov. 1, 2005.]

24. On November 4, 2005, in the Main Case, the Debtor filed its Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code. [Main Case No. 05–35291; Docket No. 357.]

25. On November 4, 2005, the Veldekens filed their Verified First Amended Complaint Pursuant to 11 U.S.C. §§ 362 and 105(a) and Ap-

plication for Preliminary Injunction. [Docket No. 12.] The Veldekens added two defendants— Newbanks, Inc. (Newbanks) and Clifton D. Thomason (Thomason)— as parties to the Adversary Proceeding. [*Id.* at ¶¶ 10–11.] The Veldekens alleged that Newbanks is a foreign corporation with its place of business in Texas and that Thomason is an architect with his principal place of business in Texas. *Id.* The Veldekens' First Amended Complaint alleged that Thomason and Newbanks were acting as authorized agents of GE [*Id.* at ¶ 80.] when they failed to perform GE's contractual obligations [*Id.* at ¶ 39.] and made negligent misrepresentations. [*Id.* at ¶ 50.] The Veldekens also asserted causes of action under the Texas Deceptive Trade Practices Act [*Id.* at ¶ 65] and alleged a conspiracy among GE, Thomason, and Newbanks. [*Id.* at ¶ 77.]

26. On December 2, 2005, this Court held a full day hearing on the Veldekens' Application for Preliminary Injunction. [Docket No. 6.]

27. On December 5, 2005, this Court announced, from the bench, its oral Findings of Fact and Conclusions of Law and denied the Veldekens' Application for Preliminary Injunction. [Docket Nos. 60, 63.] With this Court's refusal to issue a preliminary injunction, GE soon thereafter foreclosed its lien on the Tidwell Property.

28. In denying the Veldekens' Application for Preliminary Injunction, the Court found that the Veldekens failed to satisfy all four prerequisites for obtaining a preliminary injunction, which the Fifth Circuit has set forth as the follows: "(1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Authority of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). [Docket No. 63, pp. 12:20–25, 13:1–10, 29:5–8.]

29. On December 15, 2005, Defendant Newbanks filed its answer to the Veldekens' First Amended Complaint. [Docket No. 61.]

30. On January 24, 2006, in the Main Case, the Debtor filed its First Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket Nos. 469, 473.][5]

31. On February 10, 2006, in the Main Case, the Debtor filed its Second Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket No. 504.]

32. On March 3, 2006, in the Main Case, the Debtor filed an additional Second Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket No. 530.][6]

---

**5.** The docket in the Main Case shows that on the same date, January 24, 2006, two documents titled "Debtor's First Amended Plan of Reorganization" were filed. There is a slight variation between the two documents and the second entry should have been correctly titled Second Amended Plan of Reorganization.

**6.** Again, the Debtor filed two slightly varying documents with identical titles. In light of the two "first" Amended Plans that were

33. On March 16, 2006, GE filed its Motion for Summary Judgment. [Docket No. 66.]

34. On March 31, 2006, in the Main Case, the Veldekens filed their Motion for Withdrawal of Claim Pursuant to FED. R. BANKR. P. 3006, stating that the disputes related to the Lease Agreement were "properly within determination" of this Court in this Adversary Proceeding. [Main Case No. 05–35291; Docket No. 556, ¶ 4.]

35. On the same day, in the Main Case, the Veldekens filed their Objection to Confirmation of the Debtor's Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code and Supporting Memorandum of Charles Veldekens, Ashraf Veldekens, and Tidwell Properties, Inc. [Main Case No. 05–35291; Docket No. 557.]

36. On April 4, 2006, Newbanks filed its Motion for Summary Judgment. [Docket No. 70.]

37. On April 5, 2006, in the Main Case, the Debtor filed its Plan Supplement with respect to Debtor's Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, relating to the Disclosure Statement and Second Amended Chapter 11 Plan filed at Docket Nos. 529 and 530 [Main Case No. 05–35291; Docket No. 577], submitting draft forms of certain documents necessary to implement the Plan. [See Main Case No. 05–35291; Docket No. 620, at ¶ 12.]

38. On May 8, 2006, in the Main Case, the Debtor filed a modified Second Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket No. 619.] [7]

39. On May 8, 2006, in the Main Case, this Court entered its Order Confirming Debtor's Second Amended Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, as Modified relating to the Second Amended Plan at Docket No. 619 (the Plan). [Main Case No. 05–35291; Docket No. 621.] Counsel for the Veldekens appeared at this confirmation hearing to withdraw the Veldekens' prior objection to confirmation of the Plan. Id.

40. The Plan calls for Healthcare Financial Services Realty, LLC, an affiliate of GE, to transfer the Tidwell Property to the reorganized Debtor, or to Tidwell/Parkway Realco, a holding company of the reorganized Debtor. In exchange, the reorganized Debtor will have a new $2.5 million obligation to GE and GE will have senior liens and security interests in the Tidwell Property. [Id., Ex. B, Art. 8.9.]

41. On May 23, 2006, the Veldekens filed a Motion for a Rule 7016 Scheduling Conference and for Entry of Pretrial Scheduling Order. [Docket No. 80.]

42. On May 30, 2006, Thomason filed his Answer to the Veldekens' First Amended Complaint. [Docket No. 82.]

filed, these documents should have been titled the third and fourth Amended Plans.

**7.** At least three versions of the Debtor's Second Amended Plan appear on the docket.

This final version, which modifies the version filed on March 3, 2006, is the Second Amended Plan that was eventually confirmed. [See Finding of Fact No. 39.]

43. On May 30, 2006, Thomason filed his Motion for Summary Judgment. [Docket No. 83.]

44. On June 5, 2006, in the Main Case, this Court signed an Order Authorizing and Approving Proposed Exit Financing and Related Loan Documentation in Connection with Debtor's Second Amended Plan of Reorganization under Chapter 11 of the United State Bankruptcy Code, as Modified. [Main Case No. 05–35291; Docket No. 646.] In the Order, this Court stated that "the exit financing is a necessary and integral part of the Plan." [*Id.* at 2.]

45. On June 9, 2006, GE filed its Response to the Veldekens' Motion for Rule 7016 Scheduling Conference asserting that its Motion for Summary Judgment was timely and should be heard before a scheduling conference. [Docket No. 86.]

46. On June 15, 2006, the Veldekens filed their Response to Thomason's Motion for Summary Judgment arguing that their claims are not barred by the statute of limitations because Thomason did not prove when each cause of action accrued. [Docket No. 87.]

47. On June 16, 2006, the Veldekens filed a Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court. [Docket No. 88.]

48. On June 20, 2006, Newbanks filed a Motion for More Definite Statement [Docket Nos. 90, 91.], Joinder in Defendant GE's Response to Motion for Rule 7016 Scheduling Conference [Docket No. 93.], and Reply in Support of Summary Judgment. [Docket No. 94.]

49. On June 23, 2006, the Veldekens filed an Amended Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to Bankruptcy Court by the United States District Court (the Amended Motion). [Docket No. 99.]

50. On June 27, 2006, GE, Newbanks, and Thomason (collectively, the Defendants) filed a Joint Motion In Opposition to the Veldekens' Motion to Abstain and to Remand. [Docket No. 104.]

51. On the same day, the Defendants filed their First Amended Joint Opposition to Plaintiffs' Motion to Abstain and Remand. [Docket No. 109.]

52. On June 27, 2006, the Veldekens also filed their Supplemental Response to Defendants' Motions for Summary Judgment. [Docket No. 108.]

53. On June 28, 2006, the Veldekens filed their Reply in Support of Motion to Abstain and Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to Bankruptcy Court by the United States District Court. [Docket No. 112.]

54. On June 28, 2006, the Court held a hearing on the Amended Motion and the Defendants' Motions for Summary Judgment. [Docket Entry June 8, 2006.] Most of this hearing concerned arguments on the Amended Motion. At the close of the hearing, the Court asked both parties to file post-hearing

briefs. The Court continued the hearing on the Motions for Summary Judgment and the Amended Motion until August 10, 2006. *Id.*

55. On June 30, 2006, in the Main Case, the Plan became effective. [Main Case No. 05–35291; Docket No. 663.]

56. On July 12, 2006, the Veldekens filed their Response to Newbanks' Motion for More Definite Statement. [Docket No. 113.]

57. On July 14, 2006, the Defendants filed their Joint Hearing Brief Regarding Plaintiffs' Motion for Remand. [Docket No. 115.]

58. On August 4, 2006, the Veldekens filed their Post–Hearing Brief in Support of the Motion. [Docket No. 116.]

59. On August 8, 2006, the Newbanks filed its Reply in Support of Motion for More Definite Statement. [Docket No. 119.]

60. On August 9, 2006, GE filed its Response to Plaintiffs' Post–Hearing Brief in Support of Motion to Remand. [Docket No. 121.]

61. On August 10, 2006, the Court reconvened the hearing on the Amended Motion and the Defendants' Motions for Summary Judgment. [Docket Entry Aug. 10, 2006.] The Court orally announced that it had decided to deny the Amended Motion,[8] and would be issuing a written opinion to that effect. The Court also stated that it would be submitting a Report and Recommendation to the District Court recommending against withdrawal of the Referral Order. Finally, this Court determined that it was appropriate to delay ruling on the Motions for Summary Judgment until the District Court makes a decision on the Report and Recommendation. *Id.*

62. On August 25, 2006, Newbanks and Thomason filed their Separate Supplement to All Defendants' Supplemental Brief in Support of Motion for Summary Judgment and GE's Advisory to the Court Re: Motion to Strike. [Docket No. 124.]

63. On August 25, 2006, the Veldekens filed their Post–Hearing Brief in Opposition to Defendants' Motions for Summary Judgment [Docket No. 125] and Post–Hearing Brief in Opposition to Defendants' Motions for Summary Judgment. [Docket No. 126]

## III. CONCLUSIONS OF LAW REGARDING JURISDICTION

Despite (1) requesting the District Court to refer this suit to this Court; and (2) stipulating to this Court adjudicating the dispute and entering a final judgment [Findings of Fact Nos. 34, 35], the Veldekens now argue that this Court does not have subject matter jurisdiction over this suit.[9]

---

8. This Court denied the Amended Motion only as to the abstention and remand issues.

9. This Court recognizes that a party "cannot create subject-matter jurisdiction by waiver [or] estoppel." *Finley v. United States,* 490 U.S. 545, 559, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), *overruled on other grounds by* 28 U.S.C. § 1367(a); *see also Robinson v. Johnson,* 975 F.Supp. 950, 954 n. 5 (1996) (explaining that 28 U.S.C. § 1367(a) overruled *Finley,* 490 U.S. 545, 109 S.Ct. 2003). However, for purposes of considering possible issues of bad faith and forum shopping, it is noteworthy that the Veldekens are now attempting to flee this Court's jurisdiction and avoid a ruling on the Defendants' Motions for Summary Judgment after originally agreeing that this Court would have the authority to enter final judgments and orders and after

**A. Whether this Court has subject matter jurisdiction over the Adversary Proceeding is determined as of the date that the District Court referred this lawsuit to this Court.**

 Subject matter jurisdiction is tested at the time the lawsuit is removed to federal court. *Arnold v. Garlock, Inc.* 278 F.3d 426, 434 (5th Cir.2001); *Bankruptcy Trading & Inves., L.L.C. v. Chiron Financial Group, Inc.*, 342 B.R. 474, 477 (S.D.Tex.2006). At first blush, it would appear that the date to test this Court's jurisdiction is September 30, 2005, which is when GE removed the Veldekens' State Court Lawsuit to the District Court. [Civil Action No. 4:05–cv–03381, Docket No. 1.] However, at the request of both the Veldekens and GE, the District Court then referred the suit to the undersigned bankruptcy judge on October 19, 2005. [Docket Nos. 1, 104, Ex. A.] Under these circumstances, the subject matter jurisdiction of this Bankruptcy Court is tested at the time the District Court referred the Adversary Proceeding to this Court. *See Garlock,* 278 F.3d at 434; *In re Canion,* 196 F.3d 579, 587 (5th Cir.1999). Accordingly, whether this Bankruptcy Court has subject matter jurisdiction over the Adversary Proceeding is tested as of October 19, 2005.

**B. Because the Adversary Proceeding was filed pre-confirmation, this Court, in testing whether it has jurisdiction over this suit, relies upon case law regarding a bankruptcy court's jurisdiction over pre-confirmation filed lawsuits.**

In the main Chapter 11 case at bar, the Plan was confirmed on May 8, 2006, i.e. more than six months after the Adversary Proceeding was referred to this Court. [Docket No. 1; Main Case No 05–35291; Docket No. 621.] Because this suit was referred to this Court on October 19, 2005 and was pending in this Court prior to confirmation of the Plan, this Court, in testing subject matter jurisdiction, will rely upon case law from the Fifth Circuit analyzing a bankruptcy court's jurisdiction over adversary proceedings that were pending in the bankruptcy court prior to confirmation of a plan.[10]

In *Federal Deposit Insurance Corp. v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87 (5th Cir.1988), the Fifth Circuit analyzed whether the bankruptcy court had jurisdiction over a lawsuit filed five months after the filing of the Chapter 11 petition but before confirmation of the plan. The Fifth Circuit articulated the appropriate steps for making such a determination:

> Analysis of bankruptcy court jurisdiction in a particular action involves a two-step inquiry. First, whether federal jurisdiction over bankruptcy cases and proceedings exists is determined under

---

this Court has spent considerable time on this suit, including holding a full day hearing on the Veldekens' Application for Temporary Injunction.

**10.** In the Fifth Circuit, if a suit is filed *after* plan confirmation, the analysis as to whether the bankruptcy court has subject matter jurisdiction is different from the analysis that is done if the suit is pending *prior* to plan confirmation. *See Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388, 390–91 (5th Cir. 2001). The Court will subsequently discuss more fully herein the issue of jurisdiction over suits filed post-confirmation.

§ 1334(b), which is to be read as a broad grant of jurisdiction. *Id.* at 92. Second, if jurisdiction is found, § 157 is examined to determine the extent to which a bankruptcy court, rather than a district court, can adjudicate the matter, which depends on whether the matter is a core or non-core proceeding. In this case, the parties consented to the matter being determined by the bankruptcy judge. Thus, even if the matter is a non-core proceeding, a determination by the bankruptcy judge was proper as long as the matter was at least related to the bankruptcy case. *See* U.S.C. § 157(c)(2). Therefore, the key issue in this case is whether bankruptcy jurisdiction attached. Since § 1334(b) defines jurisdiction conjunctively as either "arising under," "arising in" or "related to" a case under Title 11, we need only determine whether this matter is at least related to the bankruptcy. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987).

*Id.* at 90.

This Court now applies the two-step inquiry required by *Majestic Energy* to the Adversary Proceeding at bar:

■■■ *Step No. 1:* This Court must first determine whether as of October 19, 2005 (i.e. the date that the District Court referred the suit to this Court) the Veldekens' suit was "at least related to" this Chapter 11 case. In *Wood*, the Fifth Circuit set forth that a suit is a "related to" proceeding under 28 U.S.C. § 1334(b) if the outcome of the proceeding "could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis added in *Wood*)). The Fifth Circuit expressly noted that it was adopting this definition of a "related to" proceeding from the Third Circuit's opinion in

*Pacor.* Indeed, since its adopting this definition, the Fifth Circuit has cited *Pacor* in elaborating on the broad scope the phrase "could conceivably have any effect on the estate." Specifically, in *Majestic Energy*, the Fifth Circuit, quoting *Pacor*, stated that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Majestic Energy*, 835 F.2d at 90.

Thus, there are four independent scenarios in which an adversary proceeding is a "related to" proceeding. Each of these scenarios has two elements, with the second element being the same for each scenario:

(1) The suit's outcome could alter the debtor's rights and in any way impacts upon the handling and administration of the bankrupt estate;

(2) The suit's outcome could alter the debtor's liabilities and in any way impacts upon the handling and administration of the bankrupt estate;

(3) The suit's outcome could alter the debtor's options and in any way impacts upon the handling and administration of the bankrupt estate; or

(4) The suit's outcome could alter the debtor's freedom of action (positively or negatively) and in any way impacts upon the handling and administration of the bankrupt estate.

■■■ As of October 19, 2005—the date the suit was referred to this Court—the "live" pleading before this Court was the Plaintiffs' Original Petition that the Veldekens had filed in the State Court Lawsuit. [Docket No. 6, Ex. 7.] This pleading set forth the claims which the Veldekens

were asserting against GE at that time.[11] From an examination of these claims, this Court can reach no conclusion other than that the Veldekens' suit is related to the Debtor's Chapter 11 case. Part of the relief requested by the Veldekens is for this Court to declare that the liens claimed by GE on the Tidwell Property are invalid and that the Tidwell Property belongs to the Veldekens free and clear of these allegedly invalid liens. [*Id.* at ¶¶ 25, 54, 55, and Conclusion.] As described below, if the Court grants such relief, then the outcome could easily produce any or all of the four independent scenarios that make a lawsuit a "related to" proceeding:[12]

> Scenario One: *If the suit's outcome could alter the debtor's rights and in any way impacts upon the handling and administration of the bankrupt estate*—Invalidating GE's liens on the Tidwell Property and conveying title of the Tidwell Property to the Veldekens could alter the Debtor's rights as to GE. With GE no longer having its liens on the Tidwell

Property, GE could decide to cease providing financing to the Debtor, which would deprive the Debtor of working capital financing. Such a result would force the hospital to shut down, which would certainly have an impact on the handling and the administration of the bankruptcy estate.

> Scenario Two: *If the suit's outcome could alter the Debtor's liabilities and in any way impacts upon the handling and administration of the bankrupt estate*—The Veldekens filed a proof of claim against the Debtor in the Main Case prior to October 19, 2005.[13] This claim included both past due rent and also "accruing monthly lease charges and attorneys' fees". A ruling in this Adversary Proceeding against the Veldekens and in favor of GE could limit the amount of the Veldekens'

---

**11.** On November 4, 2005, the Veldekens filed their First Amended Complaint and Application for Preliminary Injunction. [Docket No. 12.] This Amended Complaint included nine additional causes of action that did not appear in the Original Petition in the State Court Lawsuit. Because the Court is analyzing jurisdiction as of October 19, 2005, only the claims and relief requested in the Original Petition are considered.

**12.** As already discussed, the jurisdictional analysis must consider matters as of October 19, 2005 because this is the date that subject matter jurisdiction is tested. *See Arnold,* 278 F.3d at 434; *Canion,* 196 F.3d at 587; *Chiron,* 342 B.R. at 477. Although this date has long since passed and although important events have occurred since October 19, 2005—such as GE foreclosing on the real property that is the subject of the lawsuit—the analysis set forth in the four scenarios is

based upon the circumstances as they existed on October 19, 2005. For purposes of clarity, the analysis is set forth in the present tense.

**13.** The Veldekens originally filed two claims on July 1, 2005, one in the name of Charles and Ashraf Veldekens [Main Case No. 05–35291; Claim No. 127.] and the other on behalf of Tidwell Properties. [Main Case No. 05–35291; Claim No. 129.] These claims were amended and consolidated into one claim on September 6, 2005. [Main Case No. 05–35291; Claim No. 186.] Therefore, on October 19, 2005, Claim No. 186 was the "live" pleading. Six months later, the Veldekens filed a withdrawal of claim relating only to Claim Nos. 127 and 129. [Main Case No. 05–35291; Docket No. 556] The Veldekens have never sought to withdraw Claim No. 186, and, as of the date of this Memorandum Opinion, Claim No. 186 is still a "live" pleading.

claim to only past due rent and not for future payments. A claim against the Debtor is a liability. Therefore, a judgment against the Veldekens would alter the Debtor's liabilities, and could impact the handling and administration of the bankruptcy estate.

Scenario Three: *If the suit's outcome could alter the Debtor's options and in any way impacts upon the handling and administration of the bankrupt estate*—Invaliding GE's liens on the Tidwell Property and conveying title of the Tidwell Property to the Veldekens could alter the Debtor's options because the Debtor would probably no longer have the option of obtaining financing from GE. Were GE to lose its liens on the Tidwell Property, GE could decide to cease lending further monies to the Debtor, a result which, once again, could impact the handling and administration of the bankruptcy estate.

Scenario Four: *If the suit's outcome could alter the Debtor's freedom of action (positively or negatively) and in any way impacts upon the handling and administration of the bankrupt estate*—Invaliding GE's liens on the Tidwell Property and conveying title of the Tidwell Property to the Veldekens could negatively alter the Debtor's freedom of action because the Debtor would probably no longer have the option of obtaining financing from GE. GE has been extending financing to the Debtor, both prior to the bankruptcy filing and thereafter. GE has provided such financing under the express understanding that its liens on the Tidwell Property are valid.[14] A judgment or order

14. By way of example, set forth below are three instances where GE has provided financing to the Debtor under the express understanding that GE was, among other consideration, receiving a lien on the Tidwell Property or on any leasehold interest relating to the Tidwell Property:

(1) Lessor's Consent, Waiver, Estoppel Certificate and Agreement of July 2, 1998 ("For so long as the Borrower's obligations under the Loan Documents are outstanding but for the Assignment Period only as defined in the Assignment of Leases, Rents and Profits of even date herewith, *the Lessor subordinates to the Lender's lien and security interest under the Loan Documents* each and every right to payment of rent, security interest, landlord's lien, levy, or right of distraint other right which the Lessor now has or may hereafter have, under the laws of the State of Texas or any other State or by the terms of any real estate lease, sublease, security agreement, mortgage or deed of trust now in effect or hereafter executed by the Lessor or the Borrower or any other tenant of the Mortgaged Property, to execute upon, sell, levy or distrain upon for rent, in arrears, in advance or both, or to claim or assert title to, the Mortgaged Property.")(emphasis added) [Docket No. 05–3315, Ex. W, ¶ 14];

(2) Interim Order dated April 7, 2005 Authorizing Secured and Super Priority Post–Petition Financing Pursuant to 11 U.S.C. § 363, 364 and 507(B) ("GE HFS shall have and is hereby granted...valid and perfected security interests and liens in all present and after-acquired real property and personal property of the Debtor.") [Main Case No. 05–35291; Docket No. 24, p. 15.]; and

(3) Final Order dated June 1, 2005 Authorizing Secured and Super Priority Post–Petition Financing Pursuant to 11 U.S.C. § 363, 364 and 507(B)("Notwithstanding the foregoing, no Challenge (or any other action of any kind) by the Committee or by any other party shall affect in any way the validity, enforce-

from this Court invaliding these liens could conceivably jeopardize the Debtor's ability to obtain working capital financing to operate the hospital and pay ongoing bills.[15] Such a scenario could easily lead to a shutdown of the hospital's operations, which could destroy any chance of claims being paid. Such a result could impact the handling and administration of the bankruptcy estate.

Because the analysis is done with an eye on October 19, 2005—almost 7 months prior to confirmation of the Plan—there is no question that a Chapter 11 estate was in existence on October 19, 2005. Therefore, the suit's outcome could impact the handling and administration of the Debtor's bankruptcy estate. The Veldekens constantly reiterate in their briefs that there is no estate because the Plan has been confirmed; and therefore, because there is no estate, the second element of the "related to" test—i.e. whether the outcome "in any way impacts upon the handling and administration of the bankrupt estate"—cannot be satisfied. The flaw in the Veldekens' argument is that the jurisdictional analysis must be done as of the date of the referral of this suit to this Court (i.e. as of October 19, 2005), and not as of the date that the Plan was confirmed (i.e. May 8,

2006) or any time thereafter; and because the Debtor's Chapter 11 estate was in existence as of October 19, 2005, all elements of the "related to" test can be satisfied.

Because the Veldekens' suit could conceivably have an effect on the Debtor's estate, this suit is "related to" the Debtor's Chapter 11 case within the meaning of 28 U.S.C. § 1334(b). Accordingly, this Court has jurisdiction over this Adversary Proceeding.

■ *Step No. 2:* Having determined that this Court has subject matter jurisdiction over the Adversary Proceeding, this Court now applies the second step the Fifth Circuit set forth in *Majestic Energy:* to determine the extent to which this Court, rather than the District Court, can adjudicate the matter; in other words, to determine whether this Court may: (1) enter a judgment which can only be appealed to the District Court; or (2) only submit proposed findings of fact and conclusions of law to the District Court, whose review is entirely *de novo*. *See Majestic,* 835 F.2d at 90.

■ Because step one necessarily requires a determination of whether the Adversary Proceeding was a "related to" proceeding, there is no question that this Court, at a minimum, may hear this dispute and then submit proposed findings of

---

ability, or amount of the post-petition GE DIP Obligation owing under the GE DIP Loan Documents, or the validity, enforceability, perfection, or priority of the GE Liens granted to GE HFS under the GE DIP Loan Documents, the Interim Order, and this Order.") [Main Case No. 05–35291; Docket No. 141, Att. 1, p. 19.]

15. By way of one example only, the Debtor–in–Possession Loan and Security Agreement dated April 6, 2005 provides that an event of default includes the following: "Borrower *or any Affiliate of Borrower,* shall challenge or

contest, in any action, suit or proceeding, the validity or enforceability of this Agreement, or any of the other DIP Loan Documents, the legality or the enforceability of any of the obligations or the perfect or priority of any Lien granted to Lender." Upon event of default, one of the remedies available to GE is that the lender may "[t]erminate the DIP Loan, whereupon all outstanding Obligations shall be immediately due and payable." [Docket No. 05–3315, Ex. B, Art. 8.1(p) and 8.3(a)(i).]

fact and conclusions of law to the District Court pursuant to 28 U.S.C. § 157(c)(1). The remaining question therefore is whether this Court, rather than only hearing the dispute and then submitting proposed finding of facts and conclusions of law, may instead hear and determine the merits of the suit and then enter judgment. The Court may do so under either of the following statutes: (1) if all parties have consented to this Court adjudicating the dispute and entering a judgment pursuant to 28 U.S.C. § 157(c)(2); or (2) even if all parties have not consented, if the suit is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(1). Here, the Veldekens and GE expressly consented to this Court trying the suit when they filed their Agreed Motion for Referral in District Court on October 14, 2005 [Docket No. 104, Ex. A; Findings of Fact Nos. 34–35], so the Court may try the suit and then enter judgment pursuant to 28 U.S.C. § 157(c)(2).[16]

The fact that the Veldekens now want to try this lawsuit elsewhere is of no moment. By affirmatively representing to District Judge Gilmore that they wanted her to refer this suit to the undersigned bankruptcy judge for final adjudication, the Veldekens have waived any right they may have had to prosecute their claims in the District Court or any state court.[17] The Court arrives at this conclusion based upon two Fifth Circuit cases: *McFarland v. Leyh (In re Texas General Petroleum Corp.)*, 52 F.3d 1330 (5th Cir.1995) and

*M.A. Baheth Construction Co. v. Schott (In re M.A. Baheth Construction Co.)*, 118 F.3d 1082 (5th Cir.1997). In both of these cases, the party seeking to avoid a trial in bankruptcy court failed to object to the bankruptcy court entering a final judgment. *Id.* In each instance, the Fifth Circuit held that the failure to object allowed the bankruptcy court to hold trial and enter judgment. *Baheth*, 118 F.3d at 1084 ("Furthermore by failing to object to the bankruptcy court's assumption of core jurisdiction, [the Debtor] impliedly consented to the court's entry of final judgment. Thus, the bankruptcy court was statutorily authorized to enter judgment in this case, *even if the matter could be characterized as non-core.*" (emphasis added and citations omitted)); *Texas Gen. Petroleum*, 52 F.3d at 1337 ("By failing to object in the bankruptcy court, [the party] *consented impliedly to the court's assumption of core jurisdiction. . . .* We conclude that [the party's] failure to object to bankruptcy court jurisdiction allowed the court to enter judgment against him.")(emphasis added).

In the dispute at bar, *the consent of the Veldekens is not implied; it is express.* The Veldekens, through their counsel, signed the Agreed Motion for Referral to the United States Bankruptcy Court for the Southern District of Texas, Houston Division and represented to District Judge Gilmore that they "agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final or-

16. It is worth noting that on October 19, 2005, when the suit was referred to this Court, the only parties were the Veldekens and GE. [Docket No. 1.] Since that date, the Veldekens have added Thomason and Newbanks as defendants. Counsel for both Thomason and Newbanks have stated on the record that they consent to this Court adjudicating the suit and entering judgment.

17. The Veldekens have asked this Court to recommend withdrawal of the Referral Order as alternative relief if this Court will not remand the Adversary Proceeding to state court. This Court has written a Report and Recommendation to the District Court and recommends that the District Court not withdraw the Referral Order. A true and correct copy of the Report and Recommendation is attached to this Memorandum Opinion.

ders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court." [Docket No. 104, Ex. A, ¶ 3.] In order to escape from this Court, the Veldekens may not now recant what they represented to District Judge Gilmore. To bless this tactic would be to endorse blatant forum shopping and undermine judicial efficiency and economy.

**C. Even if this Court is incorrect that it should rely on case law regarding a bankruptcy court's jurisdiction on pre-confirmation filed lawsuits, but rather should rely upon case law regarding post-confirmation filed lawsuits, this Court nevertheless has subject matter jurisdiction over the Adversary Proceeding.**

**1. The case law regarding a bankruptcy court's jurisdiction over suits filed post-confirmation has developed a more exacting test than the test for bankruptcy court jurisdiction over pre-confirmation filed suits.**

■ The Veldekens contend that this Court, in determining whether it has subject matter jurisdiction, must focus on the fact that the Plan has been confirmed and that therefore the applicable cases are the opinions that focus on lawsuits filed after plan confirmation.[18] As noted previously, the Court disagrees with this argument based upon the Court's interpretation of the Fifth Circuit's holding in *Garlock*. However, if this Court is wrong and the Veldekens' argument is correct, then application of the case law involving post-confirmation filed suits nevertheless leads this Court to conclude that it has jurisdiction over the Adversary Proceeding.

As a starting point, there is no question that analysis of a bankruptcy court's subject matter jurisdiction over post-confirmation suits must begin with 28 U.S.C. § 1334(b). *In re U.S. Brass*, 301 F.3d 296, 303–304 (5th Cir.2002); *In re Coho Energy, Inc.*, 309 B.R. 217, 220 (Bankr. N.D.Tex.2004). As noted previously, 28 U.S.C. § 1334(b) defines jurisdiction conjunctively as either "arising under," "arising in," or "related to" a case under Title 11. Therefore, jurisdiction certainly exists if the post-confirmation pending lawsuit is at least related to the Chapter 11 case. *In re U.S. Brass*, 301 F.3d at 304 ("Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."). Because 28 U.S.C. § 1334 does not expressly limit bankruptcy court jurisdiction upon plan confirmation, *Id.*, it is necessary to look to case law to determine the extent of such jurisdiction. In *Majestic Energy*, which concerned a pre-confirmation filed suit, the Fifth Circuit used *Wood's* extremely broad definition of the meaning of "related to" in analyzing whether the suit came within the jurisdictional grant of 28 U.S.C. § 1334(b). Now, in analyzing whether a suit filed post-confirmation comes within 28 U.S.C. § 1334(b), the question is whether the

---

**18.** It is worth noting that the Veldekens cite cases which involves lawsuits that were filed after confirmation of a Chapter 11 plan. They cite no case where, as here, the suit was filed pre-confirmation but was still unadjudicated by the date of the confirmation hearing, and thus was a pending suit that still needed to be tried at some point after confirmation of the Plan. This Court believes that under this scenario, the applicable cases are those opinions analyzing jurisdiction over lawsuits that were filed pre-confirmation. However, for purposes of this section III.C., this Court will assume, as the Veldekens clearly have, that the applicable cases for analyzing jurisdiction are those opinions discussing a bankruptcy court's jurisdiction over suits filed after confirmation of a plan.

same expansive *Wood* definition of "related to" used in *Majestic Energy* for pre-confirmation filed suits also applies to post-confirmation filed suits? [19]

In the Fifth Circuit, the answer is resoundingly in the negative. The watershed case is *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir.2001). There, 18 months after a plan was confirmed, the reorganized debtor sued a bank asserting state law claims. The debtor argued that the bankruptcy court had "related to" jurisdiction under 28 U.S.C. § 1334(b) because, using the *Wood* definition of "related to," the outcome of the suit "could conceivably have an effect on the debtor's estate." *Id.* at 390.

In ruling against the debtor, the Fifth Circuit expressly rejected use of the *Wood* definition of "related to" for analyzing whether a bankruptcy court has jurisdiction of a suit filed post-confirmation. The Fifth Circuit stated that:

> Some circuits have utilized this theory [i.e. the expansive definition of "related to" used in *Wood,* 825 F.2d 90], which originated to describe the scope of bankruptcy jurisdiction during the pendency of the case, to assess jurisdiction after confirmation of a reorganization plan, but they have not applied it on post-confirmation facts like those before us. [citations omitted]
>
> The more persuasive theory of post-confirmation jurisdiction, however, attached critical significance to the debtor's emergence from bankruptcy protection. As the Seventh Circuit put it,

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens.

[citations omitted] *After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.* [citations omitted] No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize. This theory has antecedents in our court's jurisprudence, which has observed that the reorganization provisions of the former Bankruptcy Act "envisage[] that out of the proceedings will come a newly reorganized company capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court." [citations omitted] Because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases, we adopt this more exacting theory of post-confirmation bankruptcy jurisdiction. (emphasis added)

*Id.* at 390–391.

■ The emphasized language above is the Fifth Circuit's definition of "related to"

---

**19.** In *Bankruptcy Trading & Investments v. Chiron Financial Group, Inc.*, which involved a suit filed post-confirmation, the District Court stated, "Use of the 'related to' test for 28 U.S.C. § 1334 jurisdiction is not appropriate, however, because [the debtor's] bankruptcy reorganization plan has been confirmed." 342 B.R. at 478. This Court, with utmost respect for the District Court, disagrees with this statement. 28 U.S.C. § 1334(b) does not expressly limit bankruptcy court jurisdiction in post-confirmation pending suits. Accordingly, the "related to" analysis still needs to be done. The key inquiry is whether the scope of the phrase "related to" is different for post-confirmation suits than it is for pre-confirmation suits.

for suits filed post-confirmation. If the suit concerns "matters pertaining to the implementation or execution of the confirmed plan," then the suit is "related to" and the bankruptcy court has jurisdiction over the suit; otherwise, the court does not.

In *Craig's Stores,* the Fifth Circuit held that the bankruptcy court did not have jurisdiction because the facts reflected that the suit in no way pertained to the implementation or execution of the Plan. The Fifth Circuit focused on three factors in arriving at this conclusion. First, the court noted that the debtor's claim dealt with post-confirmation relations between the debtor and the bank. *Id.* at 391. Second, the court noted that there was no antagonism or claim pending between the parties as of the date of the reorganization (i.e. the date of the confirmation of the plan). *Id.* Finally, the court noted that the causes of action asserted by the debtor did not bear on the interpretation or execution of the confirmed plan. *Id.*

In *U.S. Brass,* the Fifth Circuit once again examined whether a suit filed post-confirmation came within the jurisdiction of the bankruptcy court. Applying the more exacting *Craig's Stores* test for jurisdiction over suits filed post-confirmation, the Fifth Circuit held that the bankruptcy court did have jurisdiction because:

> the [parties opposing jurisdiction] rely on the Bankruptcy Code's prohibition on the modification of a substantially con-

summated plan of reorganization. The [debtor and other parties supporting jurisdiction] contend, on the other hand, that their proposed agreement—including the arbitration provision—is fully consistent with the plan. Bankruptcy law will ultimately determine this dispute and the outcome could affect the parties' post-confirmation rights and responsibilities. Furthermore, this proceeding will certainly impact compliance with or completion of the reorganization plan.

*In re U.S. Brass,* 301 F.3d at 305.

In the wake of the holdings in *Craig's Stores* and *U.S. Brass,* the Veldekens strenuously insist that the Fifth Circuit's more exacting definition of "related to" applies to the Adversary Proceeding at bar, and that its application must lead to the conclusion that this Court does not have subject matter jurisdiction. This Court disagrees that the *Craig's Stores* definition of "related to" applies because, unlike the facts in that case, where the debtor's suit was filed well after confirmation of the plan, here the suit was filed several months before the Plan's confirmation; and, therefore, the *Wood* definition of "related to" applies instead of the *Craig's Stores* definition.[20] Nevertheless, even if the Veldekens are correct and this Court applies the more exacting *Craig's Stores* test to the Adversary Proceeding, this Court still concludes that it has jurisdiction over this dispute.

---

**20.** There is a noteworthy factual difference between *Craig's Stores* and *U.S. Brass.* The dispute in *U.S. Brass* arose from action that occurred pre-petition and claims were filed in the bankruptcy case. The confirmed plan resolved these claims by requiring that they "be asserted 'by institution of litigation in a court of competent jurisdiction.' " *In re U.S. Brass,* 301 F.3d at 300. After confirmation of the plan, state court suits were filed. *Id.* at 302. Despite the occurrence giving rise to the dis-

pute occurring pre-petition, and the claim being specifically addressed in the plan, the Fifth Circuit still applied the *Craig's Stores* test for post-petition filed suits. *Id.* at 304–05. Whether the Fifth Circuit did so because the suit in *U.S. Brass* was not actually filed until after plan confirmation is unclear. While one could logically conclude that this is the reason, the Fifth Circuit has simply not yet ruled on this specific issue.

**2. The more exacting test articulated in *Craig's Stores,* when applied to this Adversary Proceeding, nevertheless leads to the conclusion that this Court has subject matter jurisdiction over this dispute.**

In *In re Encompass Services Corp.,* 337 B.R. 864 (Bankr.S.D.Tex.2006), this Court reviewed six pertinent factors, based on the Fifth Circuit's decisions in *Craig's Stores* and *U.S. Brass,* and the case law applying those holdings,[21] that are relevant to a subject matter jurisdictional inquiry concerning post-confirmation suits. These factors are as follows:

(1) when the claim at issue arose; (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying suits; (3) whether the plan has been substantially consummated; (4) the nature of the parties involved; (5) whether state law or bankruptcy law applies; and (6) indices of forum shopping.

*In re Encompass,* 337 B.R. at 873.

Applying these factors to the instant Adversary Proceeding produces the following conclusions:

**a. When the claim at issue arose**

Unlike the plaintiffs in *Craig's Stores,* the Veldekens filed their lawsuit pre-confirmation. Exercising jurisdiction over a lawsuit filed pre-confirmation does not im-

plicate the Fifth Circuit's concern in *Craig's Stores* that parties will attempt to come running back into bankruptcy court every time a problem arises. In fact, "adopting a rule that would divest federal courts of subject matter jurisdiction over actions 'related to' a bankruptcy estate as the confirmation of the reorganization plan grew near would create perverse incentives for the parties to engage in delay and gamesmanship in both the bankruptcy reorganization and the related litigation." *In re WorldCom, Inc. Secs. Lit.,* 294 B.R. 553, 557 (S.D.N.Y.2003).

The advisory committee notes to Bankruptcy Rule 3020 also support a finding that a bankruptcy court should retain jurisdiction over lawsuits that were filed preconfirmation. The notes to Rule 3020(d) provide that after confirmation, the court's jurisdiction encompasses *"matters pending before it prior to confirmation* and to continue to administer the estate as necessary." Advisory Committee Notes to Bankr.R. 3020(d) (emphasis added).[22] Because the Veldekens' suit was "pending before [this Court] prior to confirmation," this Court's retention of jurisdiction over the claims seems appropriate. *Id.; Cf. In re Reliant Exploration Ltd.,* 336 B.R. 286, 291 (Bankr.S.D.Tex.2005) (finding that "the Court did not retain power to indefinitely oversee" the parties' performance under the ORRI Conveyance because "the interpretation of and the parties performance under the ORRI Conveyance were *not* matters pending 'prior to confirma-

---

**21.** *See Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.),* 309 B.R. 217, 220–221 (Bankr.N.D.Tex.2004), in which the Honorable Barbara J. Houser, United States Bankruptcy for the Northern District of Texas, provides an excellent synthesis of the holdings in *U.S. Brass* and *Craig's Stores.*

**22.** Rule 3020 itself states that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order

necessary to administer the estate." Bankr.R. 3020(d). In the case at bar, because the Debtor's estate no longer exists, there is no estate left to administer. However, the committee notes make clear that no estate is necessary for jurisdiction to exist as long as the matter was pending before the court "prior to confirmation." Advisory Committee Notes to Bankr.R. 3020(d).

tion.'") (emphasis added). In sum, this first factor weighs in favor of a finding that this Court has jurisdiction over the Adversary Proceeding.

### b. Provisions in the confirmed plan

#### i. Retention of jurisdiction

 The Plan specifically provides for the retention of jurisdiction. [Main Case No. 05–35291; Docket No. 621, at Article 11.] Some courts emphasize the importance of having a jurisdiction-retention provision in the plan when considering a bankruptcy court's post-confirmation jurisdiction. *See Enron Corp. v. Credit Suisse First Boston, Inc. (In re Enron Corp. Sec. & ERISA Litig.)*, No. G–05–0012, H–01–3624, 2005 WL 1745471, at *5 (S.D.Tex. July 25, 2005) (noting that "[t]he Second Circuit is among courts that require such a jurisdiction retention clause be included in the plan as a prerequisite for post-confirmation assertion of jurisdiction by the bankruptcy court.") (citations omitted). The Fifth Circuit, however, has made clear that jurisdiction-retention provisions are not controlling. *See In re U.S. Brass*, 301 F.3d at 303 ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157.") (quoting *United States Tr. v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764, 769 (W.D.Pa. 1997), aff'd, 166 F.3d 552 (3d Cir.1999)). While this Court acknowledges that the retention of jurisdiction provision in the Plan does not create jurisdiction, the presence of the provision at least ensures that jurisdiction cannot be lacking based on an absence of the provision. *See In re Coho Energy, Inc.*, 309 B.R. at 219 n. 4 (Bankr. N.D.Tex.2004) ("[A] plan which fails to retain subject matter jurisdiction may leave it lacking, but a plan cannot create jurisdiction where it does not otherwise exist."). Accordingly, this factor weighs in favor of a finding that this Court has jurisdiction over the Adversary Proceeding.

#### ii. Language in the plan

The Adversary Proceeding implicates the implementation of the Plan because the Plan expressly provides that GE's exit financing is a means for implementation of the Plan. [*See* Main Case No. 05–35291; Docket No. 619, at Article 8.1 (Under the heading "Means for Implementation of the Plan," the Plan states that: "Funding for the Reorganized Debtor's continuing operations of the hospitals will be provided by, and under the terms of, the GE Exit Financing.") ]. As discussed above in Section III.B., the outcome of this proceeding could jeopardize GE's exit financing. Therefore, this Adversary Proceeding directly relates to effectuating the Plan. Thus, the language of the Plan favors a holding that this Court has jurisdiction over the Adversary Proceeding.

#### iii. Facts and law arising from the plan

As noted above, the language of the Plan expressly provides for GE's exit financing and resolution of the claims in this Adversary Proceeding could jeopardize the Debtor's continued financing from GE. "[T]he prosecution of the claims in this proceeding will thus impact compliance with, or completion of, the Plan." *See In re Coho Energy*, 309 B.R. at 221 (applying the principles for post-confirmation jurisdiction established in *Craig's Stores* and finding that post-confirmation jurisdiction existed).

Thus, the provisions in the Plan weigh heavily in favor of a finding that this Court has jurisdiction over the Adversary Proceeding.

### c. Whether substantial consummation has occurred

■ "An action impacting a confirmed, but not substantially consummated plan would have an impact on the debtor-creditor relationship, a factor which favors continuing jurisdiction." *In re Encompass Servs. Corp.*, 337 B.R. at 875 (citing *In re Craig's Stores*, 266 F.3d at 391). In the present case, the Plan was confirmed on May 8, 2006 and became effective on June 30, 2006. [Main Case No. 05–35291; Docket No. 663.] The lawsuit filed by the Veldekens was commenced much earlier, April 19, 2005, in state court. [Docket No. 71, Exhibit 4.] Considering that the Effective Date occurred only recently, substantial consummation of the Plan has likely not occurred or has just recently occurred. Moreover, as noted above in Section III.B., the outcome of this Adversary Proceeding will affect the continued viability of the Plan. These circumstances weigh in favor of this Court's continuing jurisdiction.

### d. Parties involved

■ Independently viewed, the fact that this Adversary Proceeding involves only non-debtors supports a finding of no jurisdiction. Nevertheless, while the parties in the instant suit are non-debtors, the outcome of this litigation, as discussed in Section III.B. above, could substantially affect the Debtor and the implementation of the Plan. A court may still maintain jurisdiction over non-debtor adversary proceedings, especially when "the claims at issue . . . deal with the parties' pre-petition relationship with the Debtor . . . . [and] prosecution of the claims asserted . . . is integral to implementation of the Plan." *Pam Capital Funding, L.P. v. New NGC, Inc. (In re Kevco, Inc.)*, 309 B.R. 458, 468 (Bankr.N.D.Tex.2004) (finding post-confirmation jurisdiction existed in a non-debtor action where "the *Craig's Stores* test for

post-confirmation jurisdiction was satisfied."). For these reasons, this fourth factor, on balance, slightly weighs in favor of this Court not having jurisdiction over the Adversary Proceeding.

### e. Whether state law or bankruptcy law applies

■ The claims at issue are governed by Texas law. Therefore, this factor arguably weighs more in favor of a finding of no jurisdiction. It is nevertheless the case that a bankruptcy court may have jurisdiction over a proceeding in which only state law issues are present. *See Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 314 B.R. 354, 355–357 (S.D.Tex.2004) (finding that despite the presence of "only state-law claims," bankruptcy jurisdiction existed and remand was not proper because the "claims [were] related to the bankruptcy proceeding with intertwined factual and legal issues."). Moreover, while the issues themselves do not implicate bankruptcy law, the outcome of this proceeding could significantly affect the Plan, as discussed in Section III.B. This Court has already devoted substantial time to this Adversary Proceeding, including full day hearings on the Veldekens' Application for Temporary Restraining Order and the Defendants' Motions for Summary Judgment. This Court is therefore familiar with the state law that applies in this dispute. Judicial efficiency and economy would be enhanced if this Court adjudicates this suit to conclusion. For all of these reasons, this fifth factor, on balance, argues in favor of this Court's continuing jurisdiction.

### f. Indices of forum shopping

■ The Veldekens compare the lawsuit at bar to the suit in *Encompass* and conclude that "[n]one of the [six] factors support post-confirmation jurisdiction."

[Docket No. 61, at 7.] While this Court strongly disagrees with the Veldekens' contention that none of the *Encompass* factors support jurisdiction, this Court does find that the Veldekens' comparison to *Encompass* is especially pertinent on the issue of forum shopping; just as the plaintiff in *Encompass* attempted to engage in egregious forum shopping, so have the Veldekens. When the Veldekens joined GE in filing the Agreed Motion for Referral in the District Court, they agreed that this Bankruptcy Court "may hear and determine this action, and may enter appropriate final orders or judgment." [Docket No. 13, Exhibit 14.] After this Court confirmed the Plan on May 8, 2006, the Veldekens, without contesting jurisdiction, filed a motion for a Scheduling Conference and for Entry of a Pretrial Scheduling Order. [Docket No. 80.] Only after the Defendants had filed Motions for Summary Judgment, and only four days before the summary judgment hearing, did the Veldekens decide to try their luck in a different forum by filing their initial Motion to Abstain and to Remand.[23] The Veldekens now wish to litigate in state court apparently because they now believe that they will lose in this Court on the merits of the summary judgment motions. The judicial system should not tolerate such "illegitimate gamesmanship." *See In re Encompass,* 337 B.R. at 876 ("All courts should attempt to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping.") (quoting *In re Republic Reader's Serv. Inc.,* 81 B.R. 422, 428 (Bankr. S.D.Tex.1987)). Therefore, this Court believes that although the Fifth Circuit has not expressly identified forum shopping as a factor in determining post-confirmation jurisdiction, and although parties may generally challenge subject matter jurisdiction at any time, courts should be wary of parties that attempt to play fast and loose with the courts by forum shopping. *See In re Republic Reader's Serv. Inc.,* 81 B.R. at 428.

Here, the Veldekens have played as fast and loose as their counterparts did in *Encompass.* The only difference is that in *Encompass,* the forum-shopping plaintiff wanted *this Court* to adjudicate the dispute after a California state court had issued a judgment against it; whereas, here, the Veldekens want any court *other than this Court* to adjudicate the dispute because this Court has already denied their Application for a Preliminary Injunction. Now, on the eve of a hearing on the Defendants' Motions for Summary Judgment, the Veldekens are fearful of this Court granting these motions. In both instances, the forum shopping was blatant and contrary to promoting fairness and judicial efficiency and economy. Parties who forum shop in an effort to get a second bite at the litigation apple must be stopped in their scheming tracks. The sixth factor here unequivocally favors this Court's continuing jurisdiction.

In sum, four of the six factors, in various degrees, weigh in favor of a holding that this Court has subject matter jurisdiction. With respect to the two other factors, at first blush, the fact that the parties involved are non-debtors and that Texas law governs the dispute weigh in favor of this Court not retaining jurisdiction. However, these two factors cannot be viewed independently. These factors must be viewed in light of the Adversary Proceeding's potential effect on the implementation of the Plan. *See In re Craig's Stores,* 266 F.3d at 390 (After plan confirmation, "bankruptcy jurisdiction, ceases to exist, other than for

---

**23.** The Veldekens subsequently amended their initial Motion to Abstain and Remand by filing the Amended Motion on June 23, 2006. [Finding of Fact 49.]

matters pertaining to the implementation or execution of the plan."). When viewed in this light, the post-confirmation test in *Craig's Stores* is satisfied. The fact that the claims arose pre-petition, that the lawsuit itself was filed many months prior to confirmation of the Plan, that this Court has spent substantial time on the substantive issues of the Adversary Proceeding, that the Plan contains express jurisdictional provisions, and that the effect of the suit could greatly affect the Plan support this conclusion. *See Id.* at 391. The Veldekens' flagrant forum-shopping at the eleventh hour further supports such a ruling. In sum, the six factors combined lead to the conclusion that this Court has jurisdiction over the Adversary Proceeding under the more exacting test initially articulated in *Craig's Stores*.

## IV. CONCLUSIONS OF LAW REGARDING PERMISSIVE AND MANDATORY ABSTENTION

■ Even if this Court does have subject matter jurisdiction over the Adversary Proceeding, the Veldekens, in their Motion to Abstain, assert that this Court should mandatorily abstain under 28 U.S.C. § 1334(c)(2).[24] Alternatively, the Veldekens ask this Court to permissively abstain from hearing this proceeding under 28 U.S.C. § 1334(c)(1). The Court now addresses these issues in turn. It is worth noting that unlike the analysis of subject matter jurisdiction-which required this Court to test jurisdiction in the past, i.e. as of October 19, 2005-the analysis for abstention is done as of the date of the filing of the Motion to Abstain.[25]

### A. Mandatory abstention under 28 U.S.C. § 1334(c)(2) is not appropriate.

28 U.S.C. § 1334(c)(2) provides that:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■ Accordingly, under this statute, a bankruptcy court must abstain from hearing a state law claim or cause of action if the following requirements are satisfied: (1) a motion has been timely filed requesting abstention; (2) the cause of action or claim is essentially one that is premised on state law; (3) the claim is a non-core proceeding, i.e., it is "related to" a case under title 11 but does not arise under or in a case under Title 11; (4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under 28 U.S.C. § 1334(b); (5) an action has been commenced in state court; and (6) the action could be adjudicated timely in state court. *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 782–83 (E.D.Tex.2001) (In analyzing a law suit filed pre-petition that was still pending prior to plan confirmation, the court found that all elements

---

**24.** Hereinafter, reference to the phrase "Motion to Abstain" refers to that part of the Amended Motion requesting this Court to abstain.

**25.** Therefore, the "live" pleading for the Veldekens under this analysis is their First

Amended Complaint, which was filed on November 4, 2005. [Finding of Fact 25.] The First Amended Complaint contains the same causes set forth in the Original Petition filed in state court, plus several additional causes of action.

of mandatory abstention were met and therefore remanded the suit to state court); *see also J.T. Thorpe Co. v. Am. Motorists,* 2003 WL 23323005, No. Civ.A. H–02–4598 (S.D.Tex. June 9, 2003).

Application of the six factor test described above leads this Court to conclude that mandatory abstention is inappropriate because at least three of the six requirements are not satisfied.

### 1. The Veldekens' Motion to Abstain is not timely.

■ In *Broyles,* the movant filed a motion to abstain on the twenty-first day following the removal of the state court suit. *Broyles,* 266 B.R. at 783. In *Thorpe,* the movant sought abstention and remand less than 30 days after the opposing party had removed the suit to federal court. *Thorpe,* 2003 WL 23323005, at *1. In the case at bar, the Veldekens did not request this Court to abstain until more than eight months after GE removed the suit. Indeed, upon removal, the Veldekens expressly requested the District Court to refer the suit to this Court for adjudication. The Veldekens only requested abstention after this Court had, at their request, held a lengthy, full day hearing on their Application for a Preliminary Injunction-which resulted in a ruling against them-and after all three Defendants had filed Motions for Summary Judgment. These circumstances underscore the untimeliness of the Veldekens' Motion to Abstain. *Vig v. Indianapolis Life Insurance Co.,* 336 B.R. 279, 285 (S.D.Miss.2005) ("The court agrees that mandatory abstention does not apply, but only for one of the reasons submitted by defendants, which is, the plaintiffs did not file a timely request for abstention, for more than ten months passed between the date of removal and the date plaintiffs finally moved to remand.").

■ Even if timeliness should be analyzed from the date of confirmation of the Plan as opposed to the date of removal-and this Court does not believe such analysis is appropriate-the Veldekens' Motion is still untimely. If the Veldekens really believed that confirmation of the Plan deprived this Court of jurisdiction, then one would think that they would have filed their Motion to Abstain immediately after May 8, 2006 (i.e. the Plan confirmation date). Yet, they did not do so. Rather, two weeks after the Plan was confirmed, they filed a Motion for a Rule 7016 Scheduling Conference and for Entry of a Pretrial Scheduling Order. Hence, as of May 23, 2006, not only did the Veldekens *not* want this Court to abstain; they wanted this Court to go forward and adjudicate the dispute. It was only after Thomason filed his answer and his Motion for Summary Judgment that the Veldekens, no doubt mindful that this Court denied their Application for Preliminary Injunction, decided to seek abstention. Apparently, the Veldekens concluded that because this Court had confirmed the Plan, they could rely on *Craig's Stores* to argue that this Court no longer has subject matter jurisdiction. They therefore filed the Motion to Abstain on June 16, 2006, more than a month after confirmation of the Plan. Under these circumstances, the Veldekens' Motion to Abstain is untimely.

In sum, the Veldekens fail to satisfy this first requirement of timeliness.

### 2. State law causes of action

The causes of action asserted by the Veldekens are premised on state law. This second requirement is therefore met.

### 3. Is the Adversary Proceeding core or non-core?

■ 28 U.S.C. § 157 governs core proceedings. While this section does not

specifically define core proceedings, subsection (b)(2) provides a comprehensive, yet non-exclusive, list of core proceedings. *In re Baudoin,* 981 F.2d 736, 740–41 (5th Cir.1993); *Wood,* 825 F.2d at 95; *Mirant,* 337 B.R. at 116. This list includes very specific proceedings and very broad proceedings. Some examples of specific core proceedings include preference actions, 28 U.S.C. § 157(b)(2)(F), and fraudulent conveyance suits, 28 U.S.C. § 157(b)(2)(H). Broad categories of core proceedings include "all matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "other proceedings affecting the liquidation of assets of the estate," 28 U.S.C. § 157(b)(2)(O). The Fifth Circuit warns against a broad interpretation of § 157(b)(2)(O) and prefers to deem a proceeding as core under the more specific examples rather than fitting a particular proceeding into the catch-all language of subsections (b)(2)(A) and (b)(2)(O). *See Wood,* 825 F.2d at 95; *Mirant,* 337 B.R. at 116. Nevertheless, the Fifth Circuit has not limited the definition of core proceedings solely to the specific examples set forth in the laundry list of 28 U.S.C. § 157(b)(2). Rather, the Fifth Circuit has defined a core proceeding as one which "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood,* 825 F.2d at 97. When determining whether a proceeding is core, a court must consider both the form as well as the substance of the proceeding. *Id.* (citing *In re World Fin. Servs. Ctr., Inc.,* 64 B.R. 980, 984–87 (Bankr.S.D.Cal. 1986)).

■ With respect to the Adversary Proceeding at bar, the category most likely to make this lawsuit a core proceeding is 28 U.S.C. § 157(b)(2)(K) because the Veldekens, in their First Amended Complaint, seek to invalidate GE's liens on the Tidwell Property. There is a split of authority on whether the liens referred to in 28 U.S.C. § 157(b)(2)(K) must relate only to property of the estate or can also relate to property of the debtor. One line of cases follows a more lenient rule that in order for 28 U.S.C. § 157(b)(2)(K) to apply, the lien may relate to either property of the estate *or* of the debtor. *Continental Nat'l Bank v. Sanchez (In re Toledo),* 170 F.3d 1340, 1347 (11th Cir.1999); *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748 (S.D.N.Y.1994); *In re Rarick,* 132 B.R. 47, 51 (D.Colo.1991); *In re Grell,* 83 B.R. 652, 657 (Bankr.D.Minn.1988).

The stricter line of cases holds that the lien may *only* relate to the property of the estate. *In re Dr. C. Huff Co., Inc.,* 44 B.R. 129, 134 (Bankr.W.D.Ky.1984); *In re Climate Control,* 51 B.R. 359, 361 (Bankr. M.D.Fla.1985); *Citibank v. Park–Kenilworth Industries, Inc.,* 109 B.R. 321, 325 (N.D.Ill.1989); *In re Coan,* 95 B.R. 87, 89 (Bankr.N.D.Ill.1988); *In re Israel,* 112 B.R. 481, 483 (Bankr.D.Conn.1990). The only court within the Fifth Circuit to address this issue followed this latter approach, limiting the scope of 28 U.S.C. § 157(b)(2)(K) to property of the estate, but not property of the debtor. *In re Jeter,* 48 B.R. 404, 406 n. 1 (Bankr. N.D.Tex.1985).

Other subsections of 28 U.S.C. § 157(b)(2) include explicit references to either "property of the estate" (28 U.S.C. § 157(b)(2)(E)) or "claims against the estate" (28 U.S.C. § 157(b)(2)(B) and (C)), but 28 U.S.C. § 157(b)(2)(K) is silent as to any limitation on either property of the estate or of the debtor. *See In re Blackman,* 55 B.R. 437, 447 n. 8 (Bankr.D.C. 1985). The need for limits on 28 U.S.C. § 157(b)(2)(K) arises from the fact that a plain reading without any limitations would allow bankruptcy courts to assert "a form of jurisdiction *ferae naturae,* capable of

the rampant adjudication of property rights wherever found and by whomever owned." *In re Huff*, 44 B.R. at 134. However, this policy consideration is served equally by including liens on property of the debtor in addition to property of the estate. Therefore, this Court disagrees with *In re Jeter*, the only court within the Fifth Circuit addressing this point, and believes that the more persuasive approach includes liens on property of the debtor under 28 U.S.C. § 157(b)(2)(K).

▮ The liens in the present suit present a new challenge because they do not relate to property of either the estate or the debtor; rather they are liens on property which belongs to the *reorganized* Debtor. The estate ceased to exist upon confirmation of the Plan; that event also transformed the Debtor into the reorganized Debtor. As discussed above, *Wood* instructs a court to look beyond form to the substance of a proceeding in determining whether or not it is core. Here, the validity of the lien in question is vital to the success of the Plan. It is not only the validity of GE's current lien on the Tidwell Property that is necessary to the Plan's success; equally important is the validity of GE's original lien upon which it foreclosed. The Veldekens' First Amended Complaint asks this Court to invalidate that original lien and restore title in the Tidwell Property to the Veldekens. Such a result would undoubtedly alter the likelihood of success of the Plan. Therefore, looking beyond mere form to the substance of the proceeding, this Court finds that 28 U.S.C. § 157(b)(2)(K) should include liens on

property of the reorganized Debtor. Accordingly, this Adversary Proceeding is still a core proceeding under 28 U.S.C. § 157(b)(2)(K) despite the termination of the bankruptcy estate.[26]

In sum, the Adversary Proceeding is core because it involves the validity of a lien on property of the reorganized Debtor, and, therefore, the Veldekens have not satisfied this element.

4. **The proceeding could have otherwise been commenced in federal court absent federal jurisdiction under 28 U.S.C. § 1334(b).**

▮ There is no question that the Adversary Proceeding does not involve a federal question. Therefore, for jurisdiction to exist independent of 28 U.S.C. § 1334(b), there must be diversity among the parties pursuant to 28 U.S.C. § 1332. The Veldekens vigorously argue that there is no diversity jurisdiction because they are citizens of the State of Texas and the two defendants whom the Veldekens brought into the suit when they filed their First Amended Complaint, Newbanks and Thomason, are also citizens of the State of Texas. [Docket No. 99, at 8.] This Court disagrees with the Veldekens' assertion that diversity jurisdiction under this requirement is tested at the time that the Motion to Abstain was filed. The language "could have been commenced" means that diversity jurisdiction should be analyzed as of the date of the filing of the suit, or in this case the date of removal to

---

**26.** If liens on property of the reorganized Debtor are not included under 28 U.S.C. § 157(b)(2)(K), then the only other provision that this Adversary Proceeding could classify as core under would be 28 U.S.C. § 157(b)(O); and, as already discussed, the Fifth Circuit's interpretation of this broad catch-all section is much narrower than its seemingly broad language. Despite the fact that the result of the suit could greatly affect the success of the Debtor's Plan, the suit would no longer be classified as a core proceeding under the *Wood* definition.

the District Court.[27] The issue is not whether diversity would exist if the suit were presently filed in the District Court. Diversity jurisdiction did exist at the time the suit was removed to the District Court on September 30, 2005. On that date, there was only one defendant, GE, and it was a citizen of the State of Connecticut. [*See* note 4 *supra.*]

■ Even if the Veldekens' reading of this element of abstention is correct, and the addition of Newbanks and Thomason as non-diverse parties would defeat diversity jurisdiction in the District Court, they must show that these were necessary parties.[28] However, at the hearings on the Motion to Abstain on June 28, 2006 and August 10, 2006, the Veldekens did not present any evidence or make any argument as to why Newbanks and Thomason are necessary parties to the suit. Therefore, even if the Veldekens are correct in their reading of this element, they have failed to meet their burden of proof.

In sum, on the date of the removal, September 30, 2005, there was diversity between the Veldekens and GE. Alternatively, at the present time, diversity still exists because the Veldekens have not proven that Newbanks and Thomason were added as necessary parties. Accordingly, this action could have been commenced in federal court pursuant to 28 U.S.C. § 1332, and, under these circumstances, the fourth requirement is not satisfied.

### 5. The action was commenced in state court.

The Veldekens' suit was commenced in state court. Therefore, the fifth requirement is met. However, it is highly significant that after GE removed the suit to the District Court, the Veldekens joined GE in requesting the District Court to refer the dispute to this Court. Accordingly, the Veldekens are arguably estopped from claiming that this requirement has been satisfied.

### 6. The action could be adjudicated timely in state court.

■ The Veldekens, as the parties moving for mandatory abstention, have the burden to satisfy this requirement. They need not show that the suit can be more timely adjudicated in state court, but only that the matter can be timely adjudicated in state court. *Thorpe,* 2003 WL 23323005 at *2. Their naked assertion that the suit can be timely adjudicated in state court, without more, is insufficient to satisfy this requirement. *Id.; WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.,* 75 F.Supp.2d 596, 605–06 (S.D.Tex. 1999); *Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.,* 62 B.R. 873, 878 (Bankr.S.D.N.Y.1986). Here, the Veldekens provided no evidence at all as to whether the Harris County District Court (i.e. the court in which the suit was initially filed and to which the Veldekens now seek a remand) could timely adjudicate this suit. Because they have failed to introduce any such evidence, they have failed to satisfy this sixth requirement.[29]

---

**27.** When a case is removed to federal court, diversity is tested as of the date the suit was removed. *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939).

**28.** Diversity jurisdiction in federal court can be lost by adding additional necessary parties. (*See Hensgens v. Deere & Co.,* 833 F.2d 1179, 1181(5th Cir.1987)).

**29.** In instances where federal courts have found that state courts could adjudicate the dispute in a timely manner, the movant introduced evidence that the suit had already been prosecuted to some extent in the state court, which had issued various orders and become familiar with the case. *See Broyles,* 266 B.R. at 784; *Thorpe,* 2003 WL 23323005 at *3–4.

In conclusion, the Veldekens have clearly failed to satisfy the first, fourth, and sixth requirements; and arguably they are estopped from asserting that the fifth requirement has been met. All six requirements must be satisfied for mandatory abstention to apply. Therefore, this Court holds that it should not mandatorily abstain from adjudicating the Adversary Proceeding.

**B. Permissive abstention under 28 U.S.C. § 1334(c)(1) is not appropriate.**

**1. Framework for permissive abstention.**

▊▊▊▊ Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may permissively abstain "from hearing a proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The bankruptcy court has "broad power to abstain whenever appropriate." *In re Wood*, 825 F.2d at 93. Factors to be considered when deciding whether to abstain include:

(1) The effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) Extent to which state law issues predominate over bankruptcy issues;

(3) Difficult or unsettled nature of applicable law;

(4) Presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) Jurisdictional basis, if any, other than § 1334;

(6) Degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) The substance rather than the form of an asserted core proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden of the bankruptcy court's docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to a jury trial;

(12) The presence in the proceeding of nondebtor parties;

(13) Comity; and

(14) The possibility of prejudice to other parties in the action.

*Broyles*, 266 B.R. at 785 (citing *Searcy v. Knostman*, 155 B.R. 699, 710 (S.D.Miss. 1993)).

**2. Application of the factors to the Adversary Proceeding**

**a. The effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention**

▊▊▊ This factor is inapplicable in the present proceeding because the Plan has

Here, the Veldekens filed suit on August 19, 2005 in Harris County District Court. GE, almost immediately after being served, removed the lawsuit on September 30, 2005. Thus, aside from the failure of the Veldekens to introduce any evidence that the Harris County District Court could timely adjudicate the dispute, the record reflects that during the 41 days that the suit was pending in that court, virtually nothing occurred. No hearings were held, no motions were filed, no discovery was conducted, and no orders were entered on the docket. [Docket No. 6, Ex. 8.] Thus, unlike this Court, the Harris County District Court has no background at all about the nature of this lawsuit or the substantive issues to be adjudicated.

been confirmed and the estate no longer exists. *See In re Craig's Stores*, 266 F.3d at 390.

### b. Extent to which state law issues predominate over bankruptcy issues

The Adversary Proceeding includes only state law claims and does not include any bankruptcy issues. Therefore, this factor weighs in favor of permissive abstention.

### c. Difficult or unsettled nature of applicable law

The nature of the applicable law in this Adversary Proceeding is not particularly difficult. The Veldekens' causes of action—breach of contract, suit to quiet title, negligent misrepresentation, and breach of fiduciary duty—do not present novel issues of law. Moreover, because this Court has already spent substantial time adjudicating the Veldekens' Application for Temporary Restraining Order and the Defendants' Motions for Summary Judgment, including full day hearings held in December 2005 and June 2006, respectively, this Court has already familiarized itself with all of the Veldekens' claims and applicable law. Therefore, this factor weighs against

abstention and in favor of adjudicating the present proceeding in this Court.

### d. Presence of related proceeding commenced in state court or other nonbankruptcy proceeding

There are no other related proceedings in state court. Therefore, this factor weighs against abstention.

### e. Jurisdictional basis, if any, other than 28 U.S.C. § 1334

Diversity jurisdiction existed at the time this proceeding was removed to the District Court and thereafter referred to this Court. *See* Section IV.A.4. *supra.* Therefore, this factor does not weigh in favor of abstention. Indeed, given the substantial time and resources already spent by this Court, this factor weighs in favor of this Court adjudicating this suit.

### f. Degree of relatedness or remoteness of proceeding to main bankruptcy case

The Adversary Proceeding is substantially related to the main bankruptcy case because resolution of this proceeding could significantly affect the Plan.[30] If the Vel-

---

30. At the June 28, 2006 hearing on the Motion to Abstain and the Defendants' Motions for Summary Judgment, counsel for the Veldekens attempted to orally amend the pending First Amended Complaint by explaining that the Veldekens' Reply in Support of the Motion included a "withdrawal and waiver of the Veldekens' claims for any interest or title to the Tidwell Real Property, which is the subject of the Plan confirmed on May 8." Presumably, they did so in order to assert that the result of the Adversary Proceeding would not affect the success of the Plan because the only relief they seek would be monetary damages against the Defendants. Veldekens' counsel further attempted to request leave under Bankruptcy Rule 7015 to amend the Veldekens' First Amended Complaint to drop

such claims. This Court issued a bench ruling denying the oral motion to amend because the Court believes that this tactic was nothing more than a bare-faced attempt to escape this Court's jurisdiction and shop for another forum. This Court has discretion to deny such motions. Although courts shall freely give leave to amend "when justice so requires," courts "may consider such factors as ... bad faith or dilatory motive" when denying leave to amend. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139–140 (5th Cir.1993). The Veldekens' attempt to once again amend their complaint in order to defeat jurisdiction, and thereby avoid this Court's ruling on the pending Motions for Summary Judgment, constitutes bad faith and can be properly denied.

dekens prevail on their claims, GE could terminate the exit financing under the Plan. Because GE's financing is an integral part of the Plan, any threat to the continuation of GE's financing is a direct threat to the success of the Plan. [*See* Main Case No. 05–35291; Docket No. 619, at Article 8.1; *see also* Finding of Fact No. 44.] Therefore, this factor weighs heavily against abstention and strongly in favor of this Court adjudicating the Adversary Proceeding to its conclusion.

### g. The substance rather than the form of an asserted core proceeding

The Veldekens are claiming form over substance in this Adversary Proceeding by focusing on their argument that this is a non-core proceeding. The Veldekens put great importance on the fact that this proceeding involves only non-debtors and only state law claims. Their focus is on the form of the proceeding. However, moving beyond the posture of the parties to the substantive issues involved, the outcome of this proceeding could have a significant impact on the success of the Plan. As discussed under the third element of mandatory abstention above, this Court has determined that this is still a core proceeding. It is true that there is no longer an estate, and that only non-debtor parties are involved, but under 28 U.S.C. § 157(b)(2)(K) this is a core proceeding because it involves the validity of liens on property of the reorganized Debtor. Therefore, this factor weighs against abstention.

### h. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court

This factor is inapplicable in the Adversary Proceeding because all claims are state law claims.

### i. The burden of the bankruptcy court's docket

Adjudicating the Adversary Proceeding will not burden this Court's docket. This Court has ample time and resources available to resolve the present dispute. In fact, the parties have extensively briefed and argued the issues. [*See* Docket Nos. 1, 3, 6, 8, 12–17, 19, 20, 22, 24, 29, 34, 38, 42, 47, 60, 61, 63–66, 70, 71, 72, 75, 80, 82, 83, 86–88, 90, 91, 93, 94, 99, 102–105, 108, 109, 112–116, 118, 119, 121, 123–128, 130.] [Docket Minute Entries Dec. 2, 2005, Dec. 5, 2005, June 28, 2006, Aug. 10, 2006.] Additionally, on December 2, 2005, this Court held a full day hearing on the Veldekens' Application for Temporary Injunction. Further, the parties reviewed the affidavit evidence and made numerous legal arguments regarding the merits of the Motions for Summary Judgment at the August 10, 2006 hearing, which lasted nearly four hours. [Docket No. 128, p. 56.] The underlying facts and issues have not significantly changed since the December 2005 hearing on the Veldekens' Application for Preliminary Injunction. Between the parties' briefs and the hearings held on these matters, this Court has become well acquainted with the Adversary Proceeding. If the District Court should decide not to withdraw the Referral Order[31], this Court

---

**31.** It must be recalled that the Veldekens, as alternative relief to seeking a remand and abstention by this Court, request the District Court to withdraw the Referral Order. This Court has written a separate Report and Rec- ommendation to this District Court recom- mending against withdrawal of the Referral Order. A true and correct copy of this Report and Recommendation is attached to this Memorandum Opinion.

is ready to rule on the merits of the Defendants' Motions for Summary Judgment. Therefore, this factor militates against abstention and in favor of this Court adjudicating the suit to its conclusion.

### j. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

There is no indication that this proceeding arrived in this Court through forum shopping. Conversely, there is evidence that the Veldekens are forum shopping to escape from this Court. The Veldekens' attempt, at this late date, to have this Adversary Proceeding remanded to state court is a blatant example of forum shopping. Although the Veldekens originally filed this suit in state court, they did not seek remand after GE removed this suit to federal district court. In fact, they agreed to the referral of the suit to this Court. It was not until after all the Motions for Summary Judgment were filed that the Veldekens, clearly conscious of the fact that this Court had previously ruled against them on their Application for Preliminary Injunction, decided that they wanted to try this suit in state court. Allowing the Veldekens to leave this Court and go back to state court after such delay would only foster improper forum shopping and gamesmanship. It would also unnecessarily increase the legal fees and expenses of all parties, as the state court would inevitably have to spend time becoming familiar with the lawsuit, a task which would assuredly require substantial time and more hearings.[32] Therefore, this factor militates against abstention and in favor of keeping the Adversary Proceeding in this Court.

### k. The existence of a right to a jury trial

The Veldekens assert that they have a right to a jury trial. The First Amended Complaint states claims for breach of contract, suit to quiet title, negligent misrepresentation, breach of fiduciary duty and numerous others. [Docket No. 12.] This Court recognizes that if the suit had remained in the District Court, the Veldekens would have had a right to a jury trial. *See Ross v. Bernhard,* 396 U.S. 531, 542, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *see also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). However, if the Veldekens had a right to jury trial in this suit, this Court finds that they have since waived such right.

The Veldekens made a demand for a jury trial in the state court suit against GE. [Docket No. 71, Exhibit 4.] They repeated that demand to this Court in their First Amended Complaint, filed on November 4, 2005. [Docket No. 12.] Seven months passed before the Veldekens filed their Motion to Abstain. [Docket No. 88.] This Motion was the first time that the Veldekens took any action to assert their alleged right to a jury trial in the District Court. During the seven-month-period between the Veldekens first claiming the right to a jury trial and the time that they attempted to enforce that right by returning to the District Court, extensive time and resources were devoted to this Adversary Proceeding by the Defendants and the Court: GE filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) [Docket No. 15.]; the Court conducted a full day hearing on the Veldekens' Application for Preliminary Injunction [Docket No. 6.]; all

---

**32.** Whereas, if this Court keeps the Adversary Proceeding, all that is left to be done is to rule on the Motions for Summary Judgment and then hold a trial on any issues for which summary judgment is not granted.

three of the Defendants filed Motions for Summary Judgment [Docket Nos. 66, 70, 83.]; the Court held a three-hour hearing on August 10, 2006 on the Motions for Summary Judgment; and, particularly inconsistent with an intention to seek a jury trial, the Veldekens filed, on May 23, 2006, a Motion for Rule 7016 Scheduling Conference and for Entry of Pretrial Scheduling Order. [Docket No. 80.] The fact that the Veldekens filed a Rule 7016 Motion is evidence that they were contemplating and preparing for this Court to proceed without a jury. The Veldekens' assertion that they have a right to a jury trial is simply another tactic in their attempt at forum shopping.

*IG Services, Ltd. v. Deloitte & Touche, LLP (In re Blackwell)*, 279 B.R. 818 (Bankr.W.D.Tex.2002) held that a party's right to demand a jury trial can be waived if it fails to seek a timely withdrawal of the reference. *Id.* at 819–820.

> Both the statute and the rules contemplate the party who desires (and needs) withdrawal to affirmatively seek it by motion to the district court. [citations omitted]. If neither party timely takes this additional step (the essential last step to assure that one gets the jury trial they desire before the tribunal they prefer), then that failure can only be construed as a waiver of the party's right to a jury trial.
>
> ....
>
> A party's failure to follow through with the relatively simple procedural steps required to assure that party that they will have their day in court before a jury of their peers ought similarly to be treated as a waiver of that right. In this way, the party with the duty to act is the party who suffers the adverse consequences for failing to act.

*Id.*

*In re Blackwell* did not address how long of a delay in seeking a withdrawal of

the reference would be considered so "untimely" as to justify waiver of the right to a jury trial, but courts outside the Fifth Circuit have found waiver in widely varying time frames. The movant in *In re Childs* waited nearly three years after first making a demand for a jury trial to file a motion to withdraw the reference. *Reding v. Gallagher (In re Childs)*, 342 B.R. 823, 825 (M.D.Ala.2006). In addition to this obviously lengthy delay, the court also took note that the actions taken by the party asking for a withdrawal during this period were inconsistent with a demand for a jury trial:

> "In this case, [the party seeking a jury trial and withdrawal of the reference] has been a vigorous and seemingly willing participant in nearly three years of litigation in the bankruptcy court without mention of moving the proceedings to district court .... [The movant] has waited until the eve of trial, and just after their motion for summary judgment was denied, to file this Motion for Withdrawal. [The movant] concedes that they never raised the issue of their jury demand during conferences held by the bankruptcy court, or otherwise brought it to anyone's attention, other than including the demand in answers, until the instant motion was filed."

*Id.* at 828–829.

Other courts have found much shorter times to be sufficient to justify a finding of waiver of the right to a jury trial based on untimely filing a motion to withdrawal the reference. *J.P. Morgan Partners v. Kelley (In re HA–LO Indus.)*, 326 B.R. 116, 123 (Bankr.N.D.Ill.2005) (The movant delayed for 14 months. The court focused on the fact that the date for a bench trial had been set six months prior to the motion for withdrawal of the reference.); *see also Go-*

*odwyn v. V Restaurants (In re Goodwyn),* 2006 WL 1999111, at *3–4, 2006 Bankr.LEXIS 1464, at *8–9 (Bankr.M.D. Ala. June 19, 2006) (The delay here was only 10 months, but the court gave consideration to the fact that the motion for withdrawal of the reference came only two weeks before trial in the bankruptcy court was scheduled to begin.).

The theme appearing in each of the above cited cases is that the moving party was attempting to resurrect a dormant demand for a jury trial for the sole purpose of forum shopping. The Veldekens delayed seven months from initially making a jury demand in this Court to asking for a withdrawal of the Referral Order. During these intervening months, numerous pleadings and motions were filed, lengthy hearings were held, and orders were entered. The Veldekens' actions throughout each step of this Adversary Proceeding have been inconsistent with an intention to seek a jury trial, including the filing of their Rule 7016 Motion for a Scheduling Conference and for Entry of Pretrial Scheduling Order. If the Veldekens wanted to have a jury trial, they could have filed a Motion to Abstain immediately upon the filing of their First Amended Complaint in November of 2005; their failure to do so requires a finding by this Court that they have waived their right to a jury trial.

 If this Court is incorrect and the Veldekens have not waived their right to a jury trial through filing an untimely Motion to Abstain, then the Veldekens have also subjected themselves to the jurisdiction of this Court by filing a proof of claim in the Debtor's Main Case. [Main Case No. 05–35291; Docket No. 556.] Once a claimant files or expresses an intent to file a proof of claim against the estate, the claimant is no longer entitled to a jury trial. *Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).[33]

The Veldekens, in order to escape jurisdiction of this Court, attempted to withdraw their proof of claim in the Debtor's Main Case [Main Case No. 05–35291; Docket No. 556.][34] and also tried to orally amend their First Amended Complaint in the Adversary Proceeding to withdraw any claims relating to property of the reorganized Debtor.[35] They asked this Court to allow withdrawal of the claim for accrued lease payments because "such claims and disputes [are] properly within determination in Adversary Case Number 05–3772." *Id.* This admission by the Veldekens provides a sufficient nexus between the claim they filed in the Main Case and the claims they assert in the Adversary Proceeding to warrant a finding that the Veldekens waived their right to a jury trial. This Adversary Proceeding arises out of the July 27, 1998 Loan Agreement and accompanying documents, which this Court has previously found to be one contract. [Docket No. 63, p. 14:1–4.] One of the documents executed on July 27, 1998 was an Assignment of Leases, Rents and Profits executed by the Veldekens in favor of GE's predecessor-in-interest. [Dec. 2, 2005 Hrg. on Veldekens' Application for

---

**33.** However, the right to a jury trial is waived only when the cause of action will directly affect the liability or priority of the filed claim or relates to the process of the allowance or disallowance of claims. *Mirant v. Southern Co.,* 337 B.R. 107, 121 (N.D.Tex.2006); *see In re Jensen,* 946 F.2d 369, 374 (5th Cir.1991);

*see also Germain v. Ct. Nat'l Bank,* 988 F.2d 1323 (2nd Cir.1993).

**34.** *See* Note 13 *supra.*

**35.** *See* Note 30 *supra.*

Prelim. Inj., Joint Ex. 3.] Therefore, the issues raised by the Veldekens in the Adversary Proceeding, and the potential result of a final adjudication, bear directly upon the claim filed in the Main Case for future rent: if the Veldekens do not own the Tidwell Property, they will have no claim for future rents. Thus, the Veldekens' proof of claim in the Main Case operates as a waiver of their right to a jury trial in the Adversary Proceeding.

### l. The presence in the proceeding of nondebtor parties

Only non-debtor parties remain in this adversary proceeding. Therefore, this factor weighs in favor of abstention.

### m. Comity

Although the remaining claims are all state law claims, the outcome of this suit could affect the success of the Plan. There does not appear to be an important or unsettled issue of state law. Rather, the Veldekens have a run of the mill breach of contract claim. Additionally, this Bankruptcy Court, the District Court and the State Courts all share an interest in deterring forum shopping. Thus, there are no state law interests or any interests of the District Court that outweigh the collective judicial interest in stopping forum shopping, which is best served by this suit remaining in this Court. Additionally, this Court will have no problem trying the suit because it is already very familiar with the facts and claims at issue. Therefore, this factor militates against abstention.

### n. The possibility of prejudice to other parties in the action

If this Court abstains, the three Defendants will be prejudiced because of the additional attorneys' fees and costs they will incur while a state court spends the necessary time to become acquainted with the facts and applicable law in this dispute. Further, they will be prejudiced because of the delay in reaching a final adjudication in state court. This Court has already held a hearing on the pending Motions for Summary Judgment and is prepared to set a prompt trial date if the Motions for Summary Judgment are not granted in full.

### o. The balance of all the factors weighs against abstention

Of the fourteen factors that the Court must consider when determining whether permissive abstention is appropriate, it appears that factors one and eight are inapplicable, factors two and twelve favor abstention, and the remaining ten factors all weigh against abstention. This determination is not a matter of pure arithmetic, and the relative importance of the factors must be weighed. The fact that the Motion to Abstain is a thinly-veiled attempt at forum shopping clearly warrants significant consideration. A theme running throughout several factors is this Court's familiarity with the suit, including the multiple hearings and many briefs filed by the parties. As such, declining abstention would clearly be the most efficient and economical decision.

Conversely, the factors favoring abstention are that only non-debtor parties and state law issues remain. These two factors mirror the Veldekens' argument that this is a non-core proceeding. As discussed under the theory of mandatory abstention, this Adversary Proceeding is still a core proceeding because it deals with liens on property of the reorganized Debtor. Moreover, factor seven of the permissive abstention analysis instructs the Court to look beyond the mere form of the proceeding to its true substance, and, as discussed under that factor, the substantive nature of this Adversary Proceeding is such that it would greatly affect the suc-

cess of the Plan. The fact that the Adversary Proceeding only involves state claims and non-debtor parties is greatly outweighed by the indicia of forum shopping and the other factors. Thus, this Court holds that permissive abstention in the present Adversary Proceeding is not appropriate.

## V. CONCLUSION

This Court finds that the Veldekens are incorrect in asserting that this Court does not have subject matter jurisdiction over the Adversary Proceeding in this Chapter 11 case's post-confirmation period. They are wrong because 1) the correct line of cases to apply under these circumstances deals with suits filed pre-confirmation; and 2) even if the more exacting test from the post-confirmation case law applies, the application of the test still supports a finding that this Court has subject matter jurisdiction and should adjudicate the dispute.

Under *Garlock*, subject matter jurisdiction should be tested at the time the suit is removed to federal court. The state court suit was filed, removed to District Court, and, by consent, referred to this Court seven months prior to confirmation of the Plan. Therefore, *Wood's* more liberal test for subject matter jurisdiction under 28 U.S.C. § 1334(b) should apply. This Court that this Adversary Proceeding could conceivably have an effect on the estate because the result of the Veldekens' suit not only directly affects the administration of the estate but also the success of the Plan. Further, this Court has the power to enter final orders and judgment because the parties consented to such action under 28 U.S.C. § 157(c)(2) in their Agreed Motion for Referral to District Judge Gilmore.

Assuming that this Court is incorrect and the post-confirmation line of cases apply, subject matter jurisdiction is still present under the stricter *Craig's Stores* test because the claims at issue in this suit affect the "implementation or execution of the plan." After considering the factors outlined in *Craig's Stores* and *U.S. Brass,* as synthesized in *Coho Energy* and *Encompass Services,* this Court finds that (1) the Veldekens claims arose prepetition; (2) provisions in the Plan contemplate the continuing jurisdiction of this Court; (3) substantial consummation of the Plan has not occurred; (4) the non-debtor parties involved could have a great impact on the success of the Plan; (5) the Court is already familiar with the state law issues involved; and (6) there are strong indices of forum shopping in this Motion to Abstain. Therefore, even under *Craig's Stores,* this Court still has jurisdiction.

The Veldekens next claim that should this Court have subject matter jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) applies. Mandatory abstention is not warranted because (1) the Motion to Abstain was not timely filed; (2) diversity jurisdiction existed at the time the case was removed; (3) the Adversary Proceeding is still core; and (4) the Veldekens failed to meet their burden of showing that the action could be adjudicated timely in state court; indeed, they presented not one shred of evidence on this point.

Finally, the Veldekens ask this Court to exercise permissive abstention under 28 U.S.C. § 1334(c)(1). Permissive abstention is inappropriate because ten of the fourteen factors enumerated in *Broyles* weigh against abstention. This Court gives great weight to the fact that this Motion to Abstain was an attempt at forum shopping. Additionally, many factors favor denying abstention because of the relative ease with which this Court would be able to adjudicate this Adversary Proceeding due to its high degree of familiari-

ty with the facts and legal issues presented.

For the reasons set forth above, this Court denies the Motion to Abstain. A separate order denying the Motion to Abstain will be entered simultaneously with the entry of this Memorandum Opinion on the docket. The Motion to Abstain included a request, in the alternative, for a Recommendation for the Withdrawal of the Referral Order. This Court recommends against the withdrawal of the Referral Order in the attached true and correct copy of the Report and Recommendation to the United States District Court.

## REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT REGARDING MOTION OF CHARLES VELDEKENS, ASHRAF VELDEKENS, AND TIDWELL PROPERTIES, INC. FOR A RECOMMENDATION FOR THE WITHDRAWAL OF THE REFERRAL ORDER REFERRING THIS ADVERSARY PROCEEDING TO THIS BANKRUPTCY COURT

## I. INTRODUCTION

On April 6, 2005, Doctors Hospital 1997, L.P. (the Debtor) filed for Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. [Docket No. 1.][1] On August 19, 2005, Charles R. Veldekens, Ashraf Veldekens, and their privately-held company, Tidwell Properties, Inc. (collectively hereinafter referred to as the Veldekens) filed suit against GE HFS Holdings, Inc. (GE) in the District Court of Harris County, Texas. [Docket No. 71, Attach. 4.] On September 30, 2005, GE removed this state court lawsuit to the United States District Court for the Southern District of Texas, Houston Division. [Civil Action No. 4:05–cv–03381, Docket No. 1.] Upon removal, this suit was assigned to the Honorable Vanessa D. Gilmore and given Civil Action No. 05–CV–03381. *Id.* On October 14, 2005, the Veldekens and GE filed an Agreed Motion for Referral to the U.S. Bankruptcy Court for the Southern District of Texas, Houston, Division. [Docket No. 104, Ex. A.] On October 18, 2005, the Honorable Vanessa D. Gilmore signed an Order granting the Agreed Motion for Referral to Bankruptcy Court. [Docket No. 1.] This Order referred the lawsuit to the undersigned bankruptcy judge (the Referral Order). This Order also stated that "pursuant to 28 U.S.C. § 157, and based on the consent of the parties, the Bankruptcy Court may hear and determine this action, and may enter appropriate final orders or judgment." *Id.*

Immediately after the Referral Order was docketed, the Clerk of Court assigned this suit Adversary Proceeding No. 05–03772 and noted on the docket that the Veldekens were seeking to recover money and property. [Docket No. 1.] Since District Judge Gilmore referred this lawsuit to this Court, there have been numerous motions and briefs filed on a multitude of issues, and as of the date of this Report and Recommendation, there are 134 entries on the docket. On November 4, 2005, the Veldekens filed their First Amended Complaint adding two defendants: Newbanks, Inc. (Newbanks) and Clifton D. Thomason (Thomason). [Docket No. 12.] On March 16, 2006, GE filed a Motion for Summary Judgment [Docket No. 66.]; on April 4, 2006, Newbanks filed its Motion for Summary Judgment [Docket No. 70.]; and on May 30, 2006, Thomason filed his

---

1. Docket No. references are to the docket in Adversary Proceeding Number 05–3772, except that any references that begin with the phrase "Main Case" refer to docket entries in the Debtor's Chapter 11 case.

own Motion for Summary Judgment. [Docket No. 83.] On June 16, 2006, the Veldekens filed a Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court. [Docket No. 88.] Then, on June 23, 2006, the Veldekens filed their Amended Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court (the Amended Motion). [Docket No. 99.] This Court has spent substantial time adjudicating various matters in this Adversary Proceeding, including a lengthy hearing on December 2, 2005 on the Veldekens' Application for a Preliminary Injunction against GE-which was denied-as well as two hearings on June 28, 2006 and August 10, 2006 on the Defendants' Motions for Summary Judgment.

This Court views the Amended Motion as a blatant attempt by the Veldekens to forum shop. Unhappy with this Court's denial of their Application for Preliminary Injunction, and worried that this Court will grant the Defendants' pending Motions for Summary Judgment, the Veldekens have decided to attempt to have some other court adjudicate the lawsuit. In the first instance, they want to return to the Harris County District Court; in the alternative, they want the suit to be returned to the United States District Court for the Southern District of Texas. This Court has already issued an order, together with a Memorandum Opinion, denying the Veldekens' request for this Court to abstain and remand the suit to Harris County District Court.[2] Having denied this relief, this Court now turns to the request by the

Veldekens for a recommendation as to whether the Referral Order should be withdrawn so that the suit can be adjudicated in the United States District Court. This Court interprets the relief requested by the Veldekens as the same relief a party would request if the suit had initially been filed in the bankruptcy court and a motion to withdraw the reference was thereafter filed. Accordingly, pursuant to Local Bankruptcy Rule 5011, this Court now makes its Report and Recommendation to the United States District Court as to whether the Referral Order should be withdrawn.

## II. SUMMARY OF RECOMMENDATION

This Bankruptcy Court recommends that the District Court *not* withdraw the Referral Order.

## III. RELEVANT PROCEDURAL BACKGROUND OF THIS BANKRUPTCY CASE AND THIS ADVERSARY PROCEEDING

1. Mr. Veldekens and Dr. Veldekens owned land located at 510 West Tidwell Road in Houston, Harris County, Texas and certain improvements on the land, including a hospital facility (all of which property and improvements are hereinafter collectively referred to as the Tidwell Property). [Docket No. 12, ¶ 13.]

2. On or about January 23, 1998, Mr. Veldekens and Dr. Veldekens entered into a Lease Agreement with the Debtor, whereby Mr. Veldekens and Dr. Veldekens leased the Tidwell Property to the Debtor. [Docket No. 63, p. 2:8–14, 18–19; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 1.] The

2. A copy of the Memorandum Opinion on the Amended Motion regarding the abstention and remand issues is attached to this Report and Recommendation.

Debtor is a Limited Partnership based in Houston, Texas, and was founded in January of 1998 for the purpose of leasing and operating the hospital facility located on the Tidwell Property in north Houston. [Docket No. 6, ¶ 6.]

3. On or about July 27, 1998, the Debtor borrowed $7 million from HCFP Funding II, Inc. (the Loan) pursuant to a Loan Agreement. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 12.] Defendant GE was the most recent holder and owner of the Loan Agreement and all other instruments at issue in this Adversary Proceeding. [Docket No. 63, p. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

4. On or about July 27, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the Assignment of Leases, Rents and Profits in favor of HCFP Funding II, Inc. [Docket No. 63, p. 3:3–6; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 3.]

5. On or about July 27, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed a Deed of Trust and Security Agreement for the benefit of HCFP Funding II, Inc. [Docket No. 63, p. 3:7–11; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 4.] GE was the most recent holder and owner of the Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

6. On or about July 27, 1998, Mr. Veldekens and Dr. Veldekens, as guarantors, also executed a Limited Guaranty Agreement with HCFP Funding II, Inc. [Docket No. 63, pp. 2:15–18, 3:24–25, 4:1–2; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 2.], which specifies the following:

D. The proceeds from the Loan shall be used by [the Debtor] to construct new improvements on, and substantially renovate existing improvements on, the Facility and upon [the Tidwell Property], and therefore [Mr. Veldekens and Dr. Veldekens], as owner of the fee simple interest in the Property, will receive substantial benefits and increase in the value of its property from the making of the Loan to the [the Debtor].

E. In consideration of the benefits to be received by the [Mr. Veldekens and Dr. Veldekens] by the making of the Loan to the [the Debtor] and subject to the express limitation on personal liability set forth in Section 22, the [Mr. Veldekens and Dr. Veldekens have] agreed to execute and deliver to [HCFP Funding II, Inc.] this Guaranty.

[Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 2, Recitals D, E.] GE was the most recent holder and owner of the Limited Guaranty Agreement. [Docket No. 63, pp. 2:21–24, 8:25, 9:1–6.]

7. On or about November 6, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the First Amendment to Deed of Trust and Security Agreement for the benefit of HCFP Funding II, Inc. [Docket No. 63, p. 3:12–15; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 5.] GE was the most recent holder and owner of the First Amendment to Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

8. On or about December 22, 1999, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the Second Amendment to Deed of Trust and Security Agreement for the benefit of Heller Healthcare Finance, Inc. [Docket No. 63, p. 3:16–19; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 6.] Heller Healthcare Finance, Inc. was the successor to HCFP Funding II, Inc. and became the holder of the instruments HCFP Funding II, Inc. originally held. [Docket No. 63, p. 3:19–23; *see* Docket 71, Ex. 2, ¶ 11.] GE was the most recent holder and owner of the Second Amendment to Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1–6; *see* Docket No. 63, p. 2:21–24.]

9. Since purchasing the Tidwell Property in 1992 for $7.3 million, Mr. Veldekens and Dr. Veldekens received income therefrom in the form of lease payments from the Debtor and fees from sitting on the governing board, among other income. [Docket No. 63, p. 11:1–6.] The amount of income that Mr. Veldekens and Dr. Veldekens received totaled approximately $10.3 million. [Docket No. 63, p. 11:6–8.]

10. Mr. Veldekens and Dr. Veldekens transferred title to the Tidwell Property to Plaintiff Tidwell Prop-

erties, Inc. by a warranty deed filed in Harris County, Texas on December 26, 2002. [Docket No. 12, ¶ 13.] Pursuant to Federal Rule of Evidence 201(a), (b), (c),[3] this Court takes judicial notice of the Texas Secretary of State Business Organization records, which indicate that Charles Veldekens is the registered agent and sole officer and director of Tidwell Properties, Inc.

11. On April 6, 2005, the Debtor filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. [Main Case No. 05–35291; Docket No. 1.]

12. On August 19, 2005, the Veldekens[4] filed suit against GE in the 334th Judicial District of Harris County, Texas (the State Court Lawsuit). [Docket No. 71, Exhibit 4.] The Original Petition in this State Court Lawsuit alleged that: (1) the Veldekens had leased the Tidwell Property to the Debtor; (2) the Debtor's lenders[5] had agreed to issue loans to the Debtor solely for the construction of improvements on the Tidwell Property; (3) GE is a Delaware corporation doing business in Texas and acquired the Debtor's lenders;[6] (4) the Vel-

---

**3.** The Federal Rules of Evidence apply to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 1101(a), (b).

**4.** It is worth reiterating that the phrase "the Veldekens" refers not only to Mr. Veldekens and Dr. Veldekens, but also Tidwell Properties, Inc.

**5.** The Veldekens' suit alleged that the Debtor's lenders were Heller Healthcare Finance, Inc. and HCFP Funding, Inc., a/k/a HCFP Funding II, Inc. [Docket No. 71, Ex. 2, ¶ 11.] GE *is the successor in interest to these entities.*

**6.** The Veldekens' Original Petition alleges that GE "is, based on knowledge and belief, a Delaware Corporation doing business in Texas." [Docket No. 6, Ex. 7, ¶ 6.] Pursuant to Federal Rule of Evidence 201(a), (b), (c), this Court takes judicial notice of the Texas Secretary of State Business Organization records, which indicate that GE is a Connecticut Corporation, with "Jurisdiction" in "DE/USA."

dekens had agreed to grant the Debtor's lenders a lien upon the Tidwell Property only to the extent that the lenders extended loans to the Debtor for improvements on the Tidwell Property; and (5) the lenders made loans to the Debtor for purposes other than the construction of improvements on the Tidwell Property, thereby encumbering the Veldekens' fee simple interest in the property with liens related to loans "for purposes totally unrelated to improving the Tidwell Property, including purchasing a separate hospital facility on a different property not owned by the [Veldekens]." [*Id.* at ¶¶ 6, 9, 11, 13, 14.]

13. The State Court Lawsuit sought relief under the following causes of action: breach of contract, suit to remedy cloud/suit to quiet title, fraudulent inducement, fraud, and negligent misrepresentation. [*Id.* at ¶¶ 15–53.] The State Court Lawsuit also sought damages, exemplary damages, attorney's fees, and the following declaratory relief: (1) "to have the [Tidwell] Property immediately delivered back to [the Veldekens'] possession;" (2) "to have the cloud on [the Veldekens'] title created by the alleged liens on their interest in the [Tidwell] Property vacated and cancelled;" and (3) "If possession of the [Tidwell] Property is not immediately delivered back to [the Veldekens] and the cloud on [the Veldekens'] title created by Heller/GE's alleged lien is not remedied, then [the Veldekens] seek to disgorge from Heller/GE's unjust enrichment, either through a return of the Loans that [the Debtor] unjustly received or a constructive trust placed upon any interest Heller/GE has in the [Tidwell] Property." [*Id.* at ¶¶ 54–58.]

14. On September 30, 2005, GE removed the State Court Lawsuit to the United States District Court for the Southern District of Texas, Houston Division (the District Court), where it was assigned Civil Action No. 4:05–cv–03381 and assigned to the Honorable Vanessa D. Gilmore, United States District Judge. [Civil Action No. 4:05–cv–03381, Docket No. 1.]

15. In a letter to Charles and Ashraf Veldekens dated October 7, 2005, GE demanded payment of $15,540,000.00 in indebtedness under the documents executed on July 27, 1998. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 18; Docket No. 6, Ex. 11.] The letter also included a Notice of Substitute Trustee's Sale, which set forth that: (1) the Veldekens granted liens pursuant to the Deed of Trust to "secure a Limited Guaranty Agreement ... dated as of July 27, 1998, executed jointly and severally by [the Veldekens] to secure indebtedness (the 'Debt');" (2) GE was the current owner of the liens; and (3) "default has occurred in the payment of the Debt," which had matured, so that GE "authorized and directed the Substitute Trustee to file, post and mail this Notice of Substitute Trustee's Sale and to sell the Property and apply the proceeds against the Debt, as provided in the [Limited] Guaranty [Agreement]." The letter and the Notice of Substitute Trustee's Sale indicated that the sale would occur on November 1, 2005. *Id.*

16. On October 14, 2005, the Veldekens and GE jointly filed the following motion in the removed suit (bearing Civil Action No. 4:05–cv–03381) pending before District Judge Gilmore: Agreed Motion for Referral to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the Agreed Motion for Referral). [Docket No. 104, Ex. A.] This Agreed Motion for Referral made the following representations to District Judge Gilmore:

Plaintiffs Charles R. Veldekens, Ashraf Veldekens, and Tidwell Properties, Inc. ("Plaintiffs") and defendant GE HFS Holdings, Inc. ("GE HFS"), formerly known as Heller Healthcare Finance, Inc. and, before that, HCFP Funding, Inc., and the successor in interest to HCFP Funding II, Inc., *jointly move the Court to refer this case to the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.*

. . . .

*Both parties now move the Court to refer this case to the Bankruptcy Court, which is familiar with the dispute at issue.*

2. Currently pending before the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (Bohm, J.) (the "Bankruptcy Court") is a Chapter 11 bankruptcy, Cause No. 05–35291–H4–11, styles *In re Doctors Hospital 1997, L.P.* Doctors Hospital 1997, L.P. is the lessee of the real property which is the subject of this case. Further, already pending in Bankruptcy Court is Adversary Proceeding No. 05–3315, in which the Plaintiffs assert claims similar to the ones Plaintiffs brought in this matter. *The parties agree that the Bankruptcy Court is the appropriate forum to resolve the parties' dispute.*

3. *The parties agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final orders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court.*

*Id.* (emphasis added).

17. On October 18, 2005, District Judge Gilmore signed an agreed order referring the suit (Civil Action No. 4:05–cv–3381) to this Bankruptcy Court. [Docket No. 1.] This order was entered on the docket on October 19, 2005. *Id.*

18. Upon referral of this suit from the District Court to this Court, the Clerk of Court assigned this suit Adversary Proceeding No. 05–3772 (the Adversary Proceeding).

19. On October 31, 2005, the Veldekens filed their Verified Emergency Application for Temporary Restraining Order and Preliminary Injunction, requesting that this Bankruptcy Court enjoin the foreclosure sale of the Tidwell Property scheduled for November 1, 2005. [Docket No. 6, ¶ 39.]

20. On November 4, 2005, in the main case, the Debtor filed its Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code. [Main Case No. 05–35291; Docket No. 357.]

21. On November 4, 2005, the Veldekens filed their Verified First Amended Complaint Pursuant to 11 U.S.C. §§ 362 and 105(a) and Application for Preliminary Injunction. [Docket No. 12.] The Vel-

dekens added two defendants—Newbanks and Thomason—as parties to the Adversary Proceeding. [*Id.* at ¶¶ 10–11.] The Veldekens alleged that Newbanks is a foreign corporation with its place of business in Texas and that Thomason is an architect with his principal place of business in Texas. *Id.* The Veldekens' First Amended Complaint alleged that Thomason and Newbanks were acting as authorized agents of GE [*Id.* at ¶ 80.] when they failed to perform GE's contractual obligations [*Id.* at ¶ 39.] and made negligent misrepresentations. [*Id.* at ¶ 50.] The Veldekens also asserted causes of action under the Texas Deceptive Trade Practices Act [*Id.* at ¶ 65] and alleged a conspiracy among GE, Thomason, and Newbanks. [*Id.* at ¶ 77.]

22. On December 2, 2005, this Court held a full day hearing on the Veldekens' Application for Preliminary Injunction. [Docket No. 6.]

23. On December 5, 2005, this Court announced, from the bench, its oral Findings of Fact and Conclusions of Law and denied the Veldekens' Application for Preliminary Injunction. [Docket Nos. 60, 63.] With this Court's refusal to issue a preliminary injunction, GE soon thereafter foreclosed its lien on the Tidwell Property.

24. In denying the Veldekens' Application for Preliminary Injunction, the Court found that the Veldekens failed to satisfy all four prerequisites for obtaining a preliminary injunction, which the Fifth Circuit has set forth as the follows: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). [Docket No. 63, pp. 12:20–25, 13:1–10, 29:5–8.]

25. On December 15, 2005, Defendant Newbanks filed its Answer to the Veldekens' First Amended Complaint. [Docket No. 61.]

26. On January 24, 2006, the Debtor filed its First Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket Nos. 469, 473.][7]

27. On February 10, 2006, the Debtor filed its Second Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket No. 504.]

28. On March 3, 2006, the Debtor filed an additional Second Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket No. 530.][8]

29. On March 16, 2006, GE filed its Motion for Summary Judgment. [Docket No. 66.]

30. On March 31, 2006, the Veldekens filed their Motion for Withdrawal

---

7. The docket in the Main Case shows that on the same date, January 24, 2006, two documents titled "Debtor's First Amended Plan of Reorganization" were filed. There is a slight variation between the two documents and the second entry should have been correctly titled Second Amended Plan of Reorganization.

8. Again, the Debtor filed two slightly varying documents with identical titles. In light of the two "first" Amended Plans that were filed, these documents should have been titled the third and fourth Amended Plans.

of Claim Pursuant to FED. R. BANKR. P. 3006, stating that the disputes related to the Lease Agreement were "properly within determination" of this Court in this Adversary Proceeding. [Main Case No. 05–35291; Docket No. 556, ¶ 4.]

31. On the same day, the Veldekens filed their Objection to Confirmation of the Debtor's Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code and Supporting Memorandum of Charles Veldekens, Ashraf Veldekens, and Tidwell Properties, Inc. [Main Case No. 05–35291; Docket No. 557.]

32. On April 4, 2006, Newbanks filed its Motion for Summary Judgment. [Docket No. 70.]

33. On April 5, 2006, the Debtor filed its Plan Supplement with respect to Debtor's Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, relating to the Disclosure Statement and Second Amended Chapter 11 Plan filed at Docket Nos. 529 and 530 [Main Case No. 05–35291; Docket No. 577], submitting draft forms of certain documents necessary to implement the Plan. [See Main Case No. 05–35291; Docket No. 620, at ¶ 12.]

34. On May 8, 2006, the Debtor filed a modified Second Amended Chapter 11 Plan. [Main Case No. 05–35291; Docket No. 619.] [9]

35. On May 8, 2006, this Court entered its Order Confirming Debtor's Second Amended Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, as Modified relating to the Second Amended Plan at Docket No. 619 (the Plan). [Main Case No. 05–35291; Docket No. 621.] Counsel for the Veldekens appeared at this confirmation hearing to withdraw the Veldekens' prior objection to confirmation of the Plan. Id.

36. The Plan calls for Healthcare Financial Services Realty, LLC, an affiliate of GE, to transfer the Tidwell Property to the reorganized Debtor, or to Tidwell/Parkway Realco, a holding company of the reorganized Debtor. In exchange, the reorganized Debtor will have a new $2.5 million obligation to GE and GE will have senior liens and security interests in the Tidwell Property. [Id., Ex. B, Art. 8.9.]

37. On May 23, 2006, the Veldekens filed a Motion for a Rule 7016 Scheduling Conference and for Entry of Pretrial Scheduling Order. [Docket No. 80.]

38. On May 30, 2006, Thomason filed his Answer to the Veldekens' First Amended Complaint. [Docket No. 82.]

39. On May 30, 2006, Thomason filed his Motion for Summary Judgment. [Docket No. 83.]

40. On June 5, 2006, this Court signed an Order Authorizing and Approving Proposed Exit Financing and Related Loan Documentation in Connection with Debtor's Second Amended Plan of Reorganization under Chapter 11 of the United State Bankruptcy Code, as Modified. [Main Case No. 05–35291; Docket No. 646.] In the Order, this Court found that "the exit financing is a necessary and integral part of the Plan." [Id. at 2.]

9. At least three versions of the Debtor's Second Amended Plan appear on the docket. This final version, which modifies the version filed on March 3, 2006, is the Second Amended Plan that was eventually confirmed. [See Finding of Fact No. 35]

41. On June 9, 2006, GE filed its Response to the Veldekens' Motion for Rule 7016 Scheduling Conference. [Docket No. 86.]

42. On June 15, 2006, the Veldekens filed their Response to Thomason's Motion for Summary Judgment. [Docket No. 87.]

43. On June 16, 2006, the Veldekens filed a Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court. [Docket No. 88.]

44. On June 20, 2006, Newbanks filed a Motion for More Definite Statement [Docket Nos. 90, 91.], Joinder in Defendant GE's Response to Motion for Rule 7016 Scheduling Conference [Docket No. 93.], and Reply in Support of Summary Judgment. [Docket No. 94.]

45. On June 23, 2006, the Veldekens filed the Amended Motion. [Docket No. 99.]

46. On June 27, 2006, GE, Newbanks, and Thomason (collectively, the Defendants) filed a Joint Motion In Opposition to the Veldekens' Motion to Abstain and to Remand. [Docket No. 104.]

47. On the same day, the Defendants filed their First Amended Joint Opposition to Plaintiffs' Motion to Abstain and Remand. [Docket No. 109.]

48. On June 27, 2006, the Veldekens also filed their Supplemental Response to Defendants' Motions for Summary Judgment. [Docket No. 108.]

49. On June 28, 2006, the Veldekens filed their Reply in Support of Motion to Abstain and Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to Bankruptcy Court by the United States District Court. [Docket No. 112.]

50. On June 28, 2006, the Court held a hearing lasting approximately two hours on the Amended Motion and the Defendants' Motions for Summary Judgment. [Docket Entry June 28, 2006.] Most of this hearing concerned arguments on the Amended Motion. At the close of the hearing, the Court asked both parties to file post-hearing briefs. The Court continued the hearing on the Motions for Summary Judgment and the Amended Motion until August 10, 2006. *Id.*

51. On June 30, 2006, the Plan became effective. [Main Case No. 05–35291; Docket No. 663.]

52. On July 14, 2006, the Defendants filed their Joint Hearing Brief Regarding Plaintiffs' Motion for Remand. [Docket No. 115.]

53. On August 4, 2006, the Veldekens filed their Post–Hearing Brief in Support of the Motion. [Docket No. 116.]

54. On August 9, 2006, GE filed its Response to Plaintiffs' Post–Hearing Brief in Support of Motion to Remand. [Docket No. 121.]

55. On August 10, 2006, the Court reconvened the hearing on the Amended Motion and the Defendants' Motions for Summary Judgment. [Docket Entry Aug. 10, 2006.] This hearing lasted approximately four hours. The parties reviewed the affidavit evidence and made numerous legal arguments regarding the merits of the Mo-

tions for Summary Judgment. The Court orally announced that it had decided to deny the Amended Motion,[10] and would be issuing a written opinion to that effect. The Court also stated that it would be submitting a Report and Recommendation to the District Court recommending against withdrawal of the Referral Order. Finally, this Court determined that it was appropriate to delay ruling on the Motions for Summary Judgment until the District Court makes a decision on the Report and Recommendation. *Id.*

56. On August 25, 2006, Newbanks and Thomason filed their Separate Supplement to All Defendants' Supplemental Brief in Support of Motion for Summary Judgment and GE's Advisory to the Court Re: Motion to Strike. [Docket No. 124.]

57. On August 25, 2006, the Veldekens filed their Post–Hearing Brief in Opposition to Defendants' Motions for Summary Judgment [Docket No. 125] and Post–Hearing Brief in Opposition to Defendants' Motions for Summary Judgment. [Docket No. 126]

## IV. DISCUSSION OF THE MERITS OF THE VELDEKENS' REQUEST THAT THE DISTRICT COURT WITHDRAW ITS REFERRAL ORDER OF OCTOBER 18, 2005

### A. Procedural History of the Adversary Proceeding and Applicable Fifth Circuit Case Law for Determining Whether the Referral Order Should be Withdrawn

General Order 2005–6 of the United States District Court for the Southern District of Texas provides that "Bankruptcy cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 of the United states Code are automatically referred to the bankruptcy judges of this District . . . ." *See also* 28 U.S.C. § 157(a). When the Debtor filed its Chapter 11 petition in the District Court, the case was immediately referred to this Bankruptcy Court pursuant to the General Order.

The Veldekens owned the land on which one of the Debtor's two hospitals was operated. [Docket No. 12.] The dispute in this Adversary Proceeding arises out of a loan from GE's predecessor in interest to the Debtor that was guaranteed by the Veldekens. [Docket No. 63, p. 3:7–11; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 4.] The Veldekens originally filed suit in state court [Docket No. 71, Attach. 4.], and GE removed the case to the District Court based on either of two independent grounds: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332; and (2) arising under, or arising in, or related to a case under title 11 pursuant to 28 U.S.C. § 1334(b). [Civil Action No. 4:05–cv–03381, Docket No. 1.] The suit arrived in this Bankruptcy Court as a result of the parties' request to District Judge Gilmore that she refer the dispute to the undersigned bankruptcy judge. [Docket No. 104, Ex. A.] Since the referral of this suit, this Court has held numerous hearings, including the hearings on the Veldekens' Application for Preliminary Injunction (Dec. 2, 2005 and Dec. 5, 2005) and the Defendants' Motions for Summary Judgment (June 28, 2006 and Aug. 10, 2006).

As a party to the Adversary Proceeding, the Veldekens may move for withdrawal of

---

10. This Court denied the Amended Motion only as to the abstention and remand issues.

the Referral Order, and the District Court may grant that motion for "cause shown." 28 U.S.C. § 157(d).[11] Bankruptcy Local Rule 5011 requires the Veldekens to present their request for withdrawal to this Court, which then makes a recommendation to the District Court as to whether to grant or deny the Motion.

In *Holland America*, the Fifth Circuit held that in determining whether a movant has shown cause under 28 U.S.C. § 157(d) to withdraw the reference, a district court should consider the following issues: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy administration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. *Holland America Ins. Co. v. Roy,* 777 F.2d 992, 999 (5th Cir.1985); *see also Mirant Corp. v. Southern Co.,* 337 B.R. 107, 115 (N.D.Tex.2006) (considering *Holland America* factors in determination of motion to withdraw reference). This Court's review of these issues leads to the recommendation that the District Court *not* withdraw the Referral Order.

**B. Application of the six *Holland America* factors to this Adversary Proceeding**

1. *The Adversary Proceeding is a core proceeding.*

28 U.S.C. § 157 governs core proceedings. While this section does not specifi-cally define core proceedings, subsection (b)(2) provides a comprehensive, yet non-exclusive, list of core proceedings. *In re Baudoin,* 981 F.2d 736, 740–41 (5th Cir. 1993); *Wood,* 825 F.2d at 95; *Mirant,* 337 B.R. at 116. This list includes very specific proceedings and very broad proceedings. Some examples of specific core proceedings include preference actions, 28 U.S.C. § 157(b)(2)(F), and fraudulent conveyance suits, 28 U.S.C. § 157(b)(2)(H). Broad categories of core proceedings include "all matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "other proceedings affecting the liquidation of assets of the estate," 28 U.S.C. § 157(b)(2)(O). The Fifth Circuit warns against a broad interpretation of 28 U.S.C. § 157(b)(2)(O) and prefers to deem a proceeding as core under the more specific examples rather than fitting a particular proceeding into the catch-all language of subsections (b)(2)(A) and (b)(2)(O). *See Wood,* 825 F.2d at 95; *Mirant,* 337 B.R. at 116. Nevertheless, the Fifth Circuit has not limited the definition of core proceedings solely to the specific examples set forth in the laundry list of 28 U.S.C. § 157(b)(2). Rather, the Fifth Circuit has defined a core proceeding as one which "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood,* 825 F.2d at 97. When determining whether a proceeding is core, a court must consider both the form as well as the substance of the proceeding. *Id.* (citing *In re World Fin. Servs. Ctr., Inc.,* 64 B.R. 980, 984–87 (Bankr.S.D.Cal.1986)).

With respect to the Adversary Proceeding at bar, the category most likely to

**11.** In pertinent part, 28 U.S.C. § 157(d) reads as follows:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

make this lawsuit a core proceeding is 28 U.S.C. § 157(b)(2)(K) because the Veldekens, in their First Amended Complaint, seek to invalidate GE's liens on the Tidwell Property. There is a split of authority on whether the liens referred to in 28 U.S.C. § 157(b)(2)(K) must relate only to property of the estate or can also relate to property of the debtor. One line of cases follows a more lenient rule that in order for 28 U.S.C. § 157(b)(2)(K) to apply, the lien may relate to either property of the estate *or* of the debtor. *Continental Nat'l Bank v. Sanchez (In re Toledo),* 170 F.3d 1340, 1347 (11th Cir.1999); *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748 (S.D.N.Y.1994); *In re Rarick,* 132 B.R. 47, 51 (D.Colo.1991); *In re Grell,* 83 B.R. 652, 657 (Bankr.D.Minn.1988).

The stricter line of cases holds that the lien may *only* relate to the property of the estate. *In re Dr. C. Huff Co., Inc.,* 44 B.R. 129, 134 (Bankr.W.D.Ky.1984); *In re Climate Control,* 51 B.R. 359, 361 (Bankr. M.D.Fla.1985); *Citibank v. Park–Kenilworth Industries,* 109 B.R. 321, 325 (N.D.Ill.1989); *In re Coan,* 95 B.R. 87, 89 (Bankr.N.D.Ill.1988); *In re Israel,* 112 B.R. 481, 483 (Bankr.D.Conn.1990). The only court within the Fifth Circuit to address this issue followed this latter approach, limiting the scope of 28 U.S.C. § 157(b)(2)(K) to property of the estate, but not property of the debtor. *In re Jeter,* 48 B.R. 404, 406 n. 1 (Bankr. N.D.Tex.1985).

Other subsections of 28 U.S.C. § 157(b)(2) include explicit references to either "property of the estate" (28 U.S.C. § 157(b)(2)(E)) or "claims against the estate" (28 U.S.C. § 157(b)(2)(B) and (C)), but 28 U.S.C. § 157(b)(2)(K) is silent as to any limitation on either property of the

estate or of the debtor. *See In re Blackman,* 55 B.R. 437, 447 n. 8 (Bankr.D.C. 1985). The need for limits on 28 U.S.C. § 157(b)(2)(K) arises from the fact that a plain reading without any limitations would allow bankruptcy courts to assert "a form of jurisdiction *ferae naturae,* capable of the rampant adjudication of property rights wherever found and by whomever owned." *In re Huff,* 44 B.R. at 134. However, this policy consideration is served equally by including liens on property of the debtor in addition to property of the estate. Therefore, this Court disagrees with *In re Jeter,* the only court within the Fifth Circuit addressing this point, and believes that the more persuasive approach includes liens on property of the debtor under 28 U.S.C. § 157(b)(2)(K).

The liens in the present suit present a new challenge because they do not relate to property of either the estate or the debtor; rather they are liens on property which belongs to the *reorganized* Debtor. The estate ceased to exist upon confirmation of the Plan; that event also transformed the Debtor into the reorganized Debtor. As discussed above, *Wood* instructs a court to look beyond form to the substance of a proceeding in determining whether or not it is core. Here, the validity of the lien in question is vital to the success of the Plan. It is not only the validity of GE's current lien on the Tidwell Property that is necessary to the Plan; equally important is the validity of GE's original lien upon which it foreclosed. The Veldekens' First Amended Complaint asks this Court to invalidate that original lien and restore title in the Tidwell Property to the Veldekens. Such a result would undoubtedly alter the likelihood of success of the Plan.[12] Therefore, looking beyond mere

12. Part of the relief requested by the Veldekens is for this Court to declare that the liens claimed by GE on the Tidwell Property are invalid and that the Tidwell Property belongs to the Veldekens free and clear of these allegedly invalid liens. [Docket No. 6, Ex. 7. at

form to the substance of the proceeding, this Court believes that 28 U.S.C. § 157(b)(2)(K) should include liens on property of the reorganized Debtor. Accordingly, this Adversary Proceeding is still a core proceeding under 28 U.S.C. § 157(b)(2)(K) despite the termination of the bankruptcy estate.[13]

In sum, the Adversary Proceeding is core because it involves the validity of a lien on property of the reorganized Debtor. Therefore, this factor weighs against withdrawing the Referral Order.

### 2. Promotion of uniformity in bankruptcy administration

If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration. See Palmer & Palmer v. U.S. Trustee (In re Hargis), 146 B.R. 173, 176 (N.D.Tex.1992); Kenai Corp. v. Nat'l Union Fire Ins. Co., 136 B.R. 59, 61 (S.D.N.Y.1992) (finding that "[g]iven [the bankruptcy's judge's] familiarity with the bankruptcy case involving [the debtor], [the bankruptcy judge] is in the best position to monitor all the proceedings related to that bankruptcy, including this adversary proceeding."). In Hargis, the bank-

ruptcy court ordered that the debtor's attorney disgorge fees received from the debtor over the course of the bankruptcy case. Hargis, 146 B.R. at 174. The attorney appealed, and the Fifth Circuit eventually remanded the matter to the bankruptcy court, requiring it to establish the reasonableness of the bankruptcy related fees. Id. The attorney filed a motion to withdraw reference and requested the district court to make such a determination. Id. at 175. In denying the attorney's motion to withdraw reference, the district court noted that the bankruptcy judge had "reviewed the entire record of this case and [wa]s intimately familiar with the underlying facts, the parties, and the remaining issue." Id. at 176.

In the proceeding at bar, the parties have extensively briefed and argued the issues. [See Docket Nos. 1, 3, 6, 8, 12–17, 19, 20, 22, 24, 29, 34, 38, 42, 47, 60, 61, 63–66, 70, 71, 72, 75, 80, 82, 83, 86–88, 90, 91, 93, 94, 99, 102–105, 108, 109, 112–116, 118, 119, 121, 123–128, 130.] [Docket Minute Entries Dec. 2, 2005, Dec. 5, 2005, June 28, 2006, Aug. 10, 2006.] This Court held a full-day hearing on December 2, 2005 on the Veldekens' Application for Preliminary Injunction. Additionally, this Court held a four-hour hearing on August 10, 2006 during which the parties made arguments on

¶¶ 25, 54, 55] Invalidating GE's liens on the Tidwell Property and conveying title of the Tidwell Property to the Veldekens could negatively alter the Debtor's course of action because the Debtor would probably no longer have the option of obtaining financing from GE. GE has been extending financing to the Debtor, both prior to the bankruptcy filing and thereafter. GE provided such financing under the express understanding that its liens on the Tidwell Property are valid. A judgment from this Court invalidating these liens could conceivably jeopardize the Debtor's ability to obtain working capital financing to operate the hospital and pay ongoing bills. Such a scenario could easily lead to a shutdown of the hospital's operations, which would probably destroy any chance of claims

being paid pursuant tao the confirmed Plan. Such a result could substantially impact the bankruptcy process.

13. If liens on property of the reorganized Debtor are not included under § 157(b)(2)(K), then the only other provision that this Adversary Proceeding could classify as core under would be 28 U.S.C. § 157(b)(O), and, as already discussed, the Fifth Circuit's interpretation of this broad catch-all section is much narrower than its seemingly broad language. Despite the fact that the result of the suit could greatly affect the success of the Debtor's Plan, it would no longer be classified as a core proceeding under the Wood definition.

the Motions for Summary Judgment. [Docket No. 128, p. 56.] The underlying facts and issues have not significantly changed since the December 2005 hearing on the Veldekens' Application for Preliminary Injunction. Between the parties' briefs and the hearings held on these matters, this Court has become "intimately familiar with the underlying facts, the parties, and the remaining issue[s]" in this Adversary Proceeding. If the District Court should decide not to withdraw the Referral Order, this Court is ready to rule on the merits of the Defendants' Motions for Summary Judgment. Due to the large amount of time and resources that this Court has already dedicated to this Adversary Proceeding, the promotion of uniformity in bankruptcy administration weighs heavily in favor of denying the withdrawal of the Referral Order and allowing this Court to adjudicate the suit.

### 3. Reducing forum shopping and confusion

The Veldekens' Amended Motion is a transparent attempt at forum shopping. After GE removed the suit to District Court, the Veldekens did not seek a remand to state court or request the District Court to adjudicate the suit. Instead, the Veldekens joined with GE in filing the Agreed Motion for Referral with the District Court and consenting to this Bankruptcy Court entering any appropriate final judgments and orders.[14] See Katzev v. Dunavant, No. Civ. A. 97–3941, 1997 WL 786461, at *5 (E.D.Pa. Nov.20, 1997) ("In fact, this Court would promote forum shopping by withdrawing reference upon request of parties that had earlier consent-

ed to final judgment by the bankruptcy court, when the bankruptcy court may be authorized to decide the case."). The Veldekens only changed their mind and decided that they wanted to be back in District Court after all the Defendants filed their Motions for Summary Judgment.[15] This Court has previously ruled against the Veldekens on their Application for Preliminary Injunction, which included a consideration of their likelihood of success on the merits. Fearing more adverse rulings on the pending Motions for Summary Judgment, the Veldekens now seek to return to the District Court in order to escape this Court adjudicating the merits of this suit.

They should not be allowed to do so. By affirmatively representing to District Judge Gilmore that they wanted her to refer this suit to the undersigned bankruptcy judge for final adjudication, the Veldekens have waived any right they may have had to prosecute their claims in any state court or the District Court. The Court arrives at this conclusion based upon holdings in two Fifth Circuit cases: McFarland v. Leyh (In re Texas General Petroleum Corp.), 52 F.3d 1330 (5th Cir. 1995) and M.A. Baheth Construction Co. v. Schott (In re M.A. Baheth Construction Co.), 118 F.3d 1082 (5th Cir.1997). In both of these cases, the party seeking to avoid a trial in bankruptcy court failed to object to the bankruptcy court entering a final judgment. Id. In each instance, the Fifth Circuit held that the failure to object allowed the bankruptcy court to hold trial and enter judgment. Baheth, 118 F.3d at 1084 ("Furthermore by failing to object to the bankruptcy court's assumption of core ju-

14. The District Court presumably signed the Referral Order based upon the representations made in the Agreed Motion for Referral.

15. Indeed, the Veldekens prefer that the suit be remanded to the state court in Harris County, Texas. They only seek to have the suit adjudicated in the United States District Court as alternative relief if this Court refuses to abstain and remand to the Harris County District Court.

risdiction, [the Debtor] *impliedly consented to the court's entry of final judgment.* Thus, the bankruptcy court was statutorily authorized to enter judgment in this case, *even if the matter could be characterized as non-core."* (emphasis added and citations omitted)); *Texas Gen. Petroleum,* 52 F.3d at 1337 ("By failing to object in the bankruptcy court, [the party] *consented impliedly to the court's assumption of core jurisdiction* .... We conclude that [the party's] failure to object to bankruptcy court jurisdiction allowed the court to enter judgment against him.")(emphasis added).

In the dispute at bar, *the consent of the Veldekens is not implied; it is express.* The Veldekens, through their counsel, signed the Agreed Motion for Referral and represented to District Judge Gilmore that they "agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final orders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court." [Docket No. 104, Ex. A, ¶ 3.] In order to escape from this Court, the Veldekens may not now recant what they represented to District Judge Gilmore. To permit this tactic would be to endorse blatant forum shopping and undermine judicial efficiency and economy. Such conduct should not be condoned, and this factor strongly disfavors a withdrawal of the Referral Order.

### 4. *Fostering an economical use of the debtors' and creditors' resources*

When dealing with a proceeding involving a bankruptcy estate and its creditors, a major goal is the efficient use of the debtor's and creditors' resources in efforts to administer the debtor's estate and to re-solve any related litigation. *Plan Admin'r v. Lone Star RV Sales, Inc. (In re Conseco Fin. Corp.),* 324 B.R. 50, 55 (N.D.Ill.2005) (citing *Holland Am.,* 777 F.2d at 999). When a bankruptcy court is intimately familiar with the underlying facts, parties, and issues, a withdrawal of reference would only "further delay final resolution of th[e] [suit]." *Hargis,* 146 B.R. at 176. As discussed above, this Court has already held multiple hearings on the substance of the underlying dispute in this Adversary Proceeding, and the parties have spent significant amounts of time and resources briefing this Court on the state law issues. If the District Court withdraws the Referral Order, it will have to spend substantial time to become familiar with the facts and parties in this case. These efforts will be duplicative of work that this Court has already done. This delay will result in prejudice to the Defendants in the form of increased attorneys' fees associated with proceeding in District Court, as well as from the inevitable delay that will result while the District Court spends the necessary time to become acquainted with the suit. Because this Court is very familiar with the facts and issues in this proceeding, adjudication in this Court will not delay a resolution of this Adversary Proceeding, and will foster an economical use of the parties' resources. Thus, this factor favors the denial of the Motion to Withdraw the Referral Order.

### 5. *Expediting the bankruptcy process*

A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if the withdrawal would unduly delay the administration of the bankruptcy case. *In re Pruitt,* 910 F.2d 1160, 1168 (3rd Cir.1990). Because this Court is familiar with the facts and issues in this proceeding, resolution of the issues in this

Court will serve to expedite the bankruptcy process. Moreover, because the parties in this proceeding consented to this Court adjudicating the issues, this Court has the power to issue all necessary final orders and judgments. Because consent was given and this Court can enter final orders and judgments, the District Court need not review this Court's findings of fact and conclusions of law on a *de novo* basis. 28 U.S.C. § 157(c)(2); *see also In re Nell,* 71 B.R. 305, 312 (D.Utah 1987) ("Entry of consent would mean review would be by appeal."). Rather, this Court's findings in the Adversary Proceeding are only reviewed if an appeal is taken under 28 U.S.C. § 158. *Id.* Therefore, having this Court adjudicate this dispute will expedite the final resolution of the issues in this proceeding.

It also important to emphasize that a bankruptcy court which has conducted hearings in a case for an extensive period of time is in the best position to expedite the bankruptcy process. *See In re Larry's Apt., L.L.C.,* 210 B.R. 469, 474 (D.Ariz. 1997). The Debtor has been in bankruptcy for 18 months. Denying the withdrawal of the Referral Order is the quickest way to proceed to bring closure to this entire Chapter 11 case. In *Vista Metals Corp. v. Metal Brokers Int'l,* 161 B.R. 454, 458 (E.D.Wis.1993), the pre-petition conduct of the debtor resulted in a litany of claims before the bankruptcy court. The bank-

ruptcy court already had significant exposure to many of the factual and legal issues, as well as the parties, involved in the underlying dispute; therefore, by denying the request to withdraw the Referral Order, "the expeditiousness in the bankruptcy process is best served." *Id.*

In the suit at bar, the Plan has been confirmed and there is no longer a bankruptcy estate, but the "bankruptcy process" is not entirely complete. As discussed earlier, this Adversary Proceeding is still a core proceeding and could have a critical impact on the success of the Debtor's confirmed Plan.

As already previously noted, part of the relief requested by the Veldekens is for this Court to declare that the liens claimed by GE on the Tidwell Property are invalid and that the Tidwell Property belongs to the Veldekens free and clear of these allegedly invalid liens. [Docket No. 6, Ex. 7. at ¶¶ 25, 54, 55] Invalidating GE's liens on the Tidwell Property and conveying title of the Tidwell Property to the Veldekens could negatively alter the Debtor's course of action because the Debtor would probably no longer have the option of obtaining financing from GE. GE has been extending financing to the Debtor, both prior to the bankruptcy filing and thereafter. GE provided such financing under the express understanding that its liens on the Tidwell Property are valid.[16] A judgment from

---

**16.** By way of example, set forth below are three instances where GE has provided financing to the Debtor under the express understanding that GE was, among other consideration, receiving a lien on the Tidwell Property or on any leasehold interest relating to the Tidwell Property:

(1) Lessor's Consent, Waiver, Estoppel Certificate and Agreement of July 2, 1998 ("For so long as the Borrower's obligations under the Loan Documents are outstanding but for the Assignment Period only as defined in the Assignment of Leases, Rents and Profits of

even date herewith, *the Lessor subordinates to the Lender's lien and security interest under the Loan Documents* each and every right to payment of rent, security interest, landlord's lien, levy, or right of distraint other right which the Lessor now has or may hereafter have, under the laws of the State of Texas or any other State or by the terms of any real estate lease, sublease, security agreement, mortgage or deed of trust now in effect or hereafter executed by the Lessor or the Borrower or any other tenant of the Mortgaged Property, to execute upon, sell, levy or distrain upon for

this Court invalidating these liens could conceivably jeopardize the Debtor's ability to obtain working capital financing to operate the hospital and pay ongoing bills.[17] Such a scenario could easily lead to a shutdown of the hospital's operations, which would probably destroy any chance of claims being paid pursuant to the confirmed Plan. Such a result could substantially impact the bankruptcy process.

Moreover, if the Veldekens are awarded title to the Tidwell Property, the Debtor would have to lease the Tidwell Property from the Veldekens. These circumstances negatively affect the Debtor's course of action for paying certain bills because if lease payments have to made to the Veldekens, the Debtor will probably have less cash to pay other creditors. This result could also materially impact the bankruptcy process.

Therefore, while this Adversary Proceeding is still pending, the future success of the Plan remains in jeopardy. Because this Court is in a position to enter a final judgment faster than the District Court, the bankruptcy process will be more expeditiously handled if the District Court does not withdraw the Referral Order.

### 6. *Jury trial*

The Veldekens assert that they have a right to a jury trial. The First Amended Complaint states claims for breach of contract, suit to remove cloud on title, suit to quiet title, negligent misrepresentation, breach of fiduciary duty and numerous others. [Docket No. 12.] This Court recognizes that if the suit had remained in the District Court, the Veldekens would have had a right to a jury trial. *See Ross v. Bernhard*, 396 U.S. 531, 542, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). However, even if the Veldekens had a right to jury trial in this suit, this Court believes that they have since waived such right. In the alternative, even if this Court is incorrect about the Veldekens waiving their right to a jury trial, this Court should be "specially designated" by the District Court, pursuant to 28 U.S.C. § 157(e), to conduct a jury trial

---

rent, in arrears, in advance or both, or to claim or assert title to, the Mortgaged Property.")(emphasis added) [Docket No. 05–3315, Ex. W, ¶ 14];

(2) Interim Order dated April 7, 2005 Authorizing Secured and Super Priority Post–Petition Financing Pursuant to 11 U.S.C. § 363, 364 and 507(B) ("GE HFS shall have and is hereby granted...valid and perfected security interests and liens in all present and after-acquired real property and personal property of the Debtor.") [Main Case No. 05–35291; Docket No. 24, p. 15.]; and

(3) Final Order dated June 1, 2005 Authorizing Secured and Super Priority Post–Petition Financing Pursuant to 11 U.S.C. § 363, 364 and 507(B)("Notwithstanding the foregoing, no Challenge (or any other action of any kind) by the Committee or by any other party shall affect in any way the validity, enforceability, or amount of the post-petition GE DIP Obligation owing under the GE DIP Loan Documents, or the validity, enforceability, perfection, or priority of the GE Liens granted to GE HFS under the GE DIP Loan Documents, the Interim Order, and this Order.") [Main Case No. 05–35291; Docket No. 141, Att. 1, p. 19.]

17. By way of one example only, the Debtor–in–Possession Loan and Security Agreement dated April 6, 2005 provides that an event of default includes the following: "Borrower *or any Affiliate of Borrower*, shall challenge or contest, in any action, suit or proceeding, the validity or enforceability of this Agreement, or any of the other DIP Loan Documents, the legality or the enforceability of any of the obligations or the perfect or priority of any Lien granted to Lender." Upon event of default, one of the remedies available to GE is that the lender may "[t]erminate the DIP Loan, whereupon all outstanding Obligations shall be immediately due and payable." [Docket No. 05–3315, Ex. B, Art. 8.1(p) and 8.3(a)(i).]

if it becomes necessary in this Adversary Proceeding.

The Veldekens made a demand for a jury trial in the state court suit against GE. [Docket No. 71, Exhibit 4.] They repeated that demand to this Court in their First Amended Complaint, filed on November 4, 2005. [Docket No. 12.] Seven months passed before the Veldekens filed their initial Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order.[18] [Docket No. 88.] This initial motion was the first time that the Veldekens took any action to assert their alleged right to a jury trial in the District Court. During the seven-month-period between the Veldekens first claiming the right to a jury trial and the time that they attempted to enforce that right by returning to the District Court, extensive resources were devoted to this Adversary Proceeding by the Defendants, the Veldekens, and this Bankruptcy Court: GE filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) [Docket No. 15.]; the Court conducted a full day hearing on the Veldekens' Application for Preliminary Injunction [Docket No. 6.]; all three of the Defendants filed Motions for Summary Judgment [Docket Nos. 66, 70, 83.]; and, particularly inconsistent with an intention to seek a jury trial, the Veldekens filed, on May 23, 2006, a Motion for Rule 7016 Scheduling Conference and for Entry of Pretrial Scheduling Order. [Docket No. 80.] The fact that the Veldekens filed a Rule 7016 Motion is evidence that they were contemplating and preparing for this Court to adjudicate this suit without a jury. The Veldekens' assertion that they have a right to a jury trial is another tactic in their attempt at forum shopping.

*IG Services, Ltd. v. Deloitte & Touche, LLP (In re Blackwell)*, 279 B.R. 818 (Bankr.W.D.Tex.2002) held that a party's right to demand a jury trial can be waived if it fails to seek a timely withdrawal of the reference. *Id.* at 819–820.

> "Both the statute and the rules contemplate the party who desires (and needs) withdrawal to affirmatively seek it by motion to the district court. [citations omitted]. If neither party timely takes this additional step (the essential last step to assure that one gets the jury trial they desire before the tribunal they prefer), then that failure can only be construed as a waiver of the party's right to a jury trial.
>
> . . .
>
> A party's failure to follow through with the relatively simple procedural steps required to assure that party that they will have their day in court before a jury of their peers ought similarly to be treated as a waiver of that right. In this way, the party with the duty to act is the party who suffers the adverse consequences for failing to act." *Id.*

*In re Blackwell* did not address how long of a delay in seeking a withdrawal of the reference would be considered so "untimely" as to justify waiver of the right to a jury trial, but courts outside the Fifth Circuit have found waiver in widely varying time frames. The movant in *In re Childs* waited nearly three years after first making a demand for a jury trial to file a motion to withdraw the reference. *Reding v. Gallagher (In re Childs)*, 342 B.R. 823, 825 (M.D.Ala.2006). In addition to this obviously lengthy delay, the court also took note that the actions taken by the party asking for a withdrawal during this period were inconsistent with a demand for a jury trial:

---

18. The Veldekens then filed the Amended Motion a week later. [Docket 99.]

"In this case, [the party seeking a jury trial and withdrawal of the reference] has been a vigorous and seemingly willing participant in nearly three years of litigation in the bankruptcy court without mention of moving the proceedings to district court... [The movant] has waited until the eve of trial, and just after their motion for summary judgment was denied, to file this Motion for Withdrawal. [The movant] concedes that they never raised the issue of their jury demand during conferences held by the bankruptcy court, or otherwise brought it to anyone's attention, other than including the demand in answers, until the instant motion was filed." *Id.* at 828–829.

Other courts have found much shorter times to be sufficient to justify a finding of waiver of the right to a jury trial based on untimely filing a motion to withdrawal the reference. *J.P. Morgan Partners v. Kelley (In re HA–LO Indus.),* 326 B.R. 116, 123 (N.D.Ill.2005) (The movant delayed for 14 months. The court focused on the fact that the date for a bench trial had been set six months prior to the motion for withdrawal of the reference.); *see also Goodwyn v. V Restaurants (In re Goodwyn),* 2006 WL 1999111, at *3–4, 2006 Bankr.LEXIS 1464, at *8–9 (Bankr.M.D. Ala. June 19, 2006) (The delay here was only 10 months, but the court gave consideration to the fact that the motion for withdrawal of the reference came only two weeks before trial in the bankruptcy court was scheduled to begin.).

The theme appearing in each of the above cited cases is that the moving party was attempting to resurrect a dormant demand for a jury trial for the sole purpose of forum shopping. The Veldekens delayed seven months from initially making a jury demand in this Court to asking for a withdrawal of the Referral Order. During these intervening months, numerous pleadings and motions were filed, lengthy hearings were held, and orders were entered. The Veldekens' actions throughout each step of this Adversary Proceeding have been inconsistent with an intention to seek a jury trial, including the filing of their Rule 7016 Motion for a Scheduling Conference and for Entry of Pretrial Scheduling Order. If the Veldekens wanted to have a jury trial, they could have filed a motion to withdraw the Referral Order immediately upon the filing of their First Amended Complaint in November of 2005; their failure to do so can lead to no other conclusion than that they have waived their right to a jury trial.

If the District Court disagrees with this Court and finds that the Veldekens have not waived their right to a jury trial through an untimely motion for withdrawal of the Referral Order, then the Veldekens have also subjected themselves to the jurisdiction of this Bankruptcy Court by filing a proof of claim in the Debtor's Main Case. [Main Case No. 05–35291; Docket No. 556.] Once a claimant files or expresses an intent to file a proof of claim against the estate, the claimant is no longer entitled to a jury trial. *Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990)(citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).[19]

---

**19.** However, the right to a jury trial is waived only when the cause of action will directly affect the liability or priority of the filed claim or relates to the process of the allowance or disallowance of claims. *Mirant v. Southern Co.,* 337 B.R. 107, 121 (N.D.Tex.2006); *see In re Jensen,* 946 F.2d 369, 374 (5th Cir.1991); *see also Germain v. Ct. Nat'l Bank,* 988 F.2d 1323 (2nd Cir.1993). Here, at least some of the causes of action asserted by the Veldekens in their First Amended Complaint do directly

The Veldekens, in order to escape jurisdiction of this Court, attempted to withdraw their proof of claim in the Debtor's Main Case [Main Case No. 05–35291; Docket No. 556.][20] and also tried to orally amend their First Amended Complaint in the Adversary Proceeding to withdraw any claims relating to property of the estate and the reorganized Debtor.[21] They asked this Court to allow withdrawal of the claim for accrued lease payments because, as they noted in their Motion for Withdrawal of Proof of Claim, "such claims and disputes [are] properly within determination in Adversary Case Number 05–3772." *Id.* This admission by the Veldekens provides a sufficient nexus between the claim they filed in the Main Case[22] and the claims they assert in the Adversary Proceeding to warrant a finding that the Veldekens waived their right to a jury trial. This Adversary Proceeding arises out of the July 27, 1998 Loan Agreement and accompanying documents, which this Court has previously found to be one contract. [Docket No. 63, p. 14:1–4.] One of the documents executed on July 27, 1998 was an Assignment of Leases, Rents and Profits executed by the Veldekens in favor of GE's predecessor-in-interest. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 3.] Therefore, the issues raised by the Veldekens in the Adversary Proceeding, and the potential re-

affect the amount of the liability of the claim that they filed in the main case.

**20.** The Veldekens originally filed two claims on July 1, 2005, one in the name of Charles and Ashraf Veldekens [Main Case No. 05–35291; Claim No. 127.] and the other on behalf of Tidwell Properties. [Main Case No. 05–35291; Claim No. 129.] These claims were amended and consolidated into one claim on September 6, 2005. [Main Case No. 05–35291; Claim No. 186.] Therefore, on October 19,2005 (i.e. the date of referral), Claim No. 186 was the "live" pleading. Six months later, the Veldekens filed a withdrawal of claim relating only to Claim Nos. 127 and 129. [Main Case No. 05–35291; Docket No. 556] The Veldekens have *never* sought to withdraw Claim No. 186, and, as of the date of this Memorandum Opinion, Claim No. 186 is still a "live" pleading.

**21.** At the June 28, 2006 hearing on the Motion and the Defendants' Motions for Summary Judgment, counsel for the Veldekens attempted to orally amend the pending First Amended Complaint by explaining that the Veldekens' Reply in Support of the Motion included a "withdrawal and waiver of the Veldekens' claims for any interest or title to the Tidwell Real Property, which is the subject of the Plan confirmed on May 8." Presumably, they did so in order to be able to argue that the result of the Adversary Proceeding would not affect the success of the Plan because the Tidwell Property would no longer be at risk; the Veldekens would only be seeking monetary damages from the Defendants. Veldekens' counsel further attempted to request leave under Bankruptcy Rule 7015 to amend the Veldekens' First Amended Complaint to drop such claims. This Court issued a bench ruling denying the oral motion to amend because the Court believes that this tactic was nothing more than a bare-faced attempt to escape this Court's jurisdiction and shop for another forum. This Court has discretion to deny such motions. Although courts shall freely give leave to amend "when justice so requires," courts "may consider such factors as ... bad faith or dilatory motive" when denying leave to amend. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139–140 (5th Cir.1993). The Veldekens' attempt to amend their First Amended Complaint in order to defeat jurisdiction, and thereby avoid summary judgment, constitutes bad faith and can be properly denied.

**22.** The Veldekens' Amended Proof of Claim, filed on September 6, 2005, includes, aside from a claim for past due rent, "accruing monthly lease charges and attorneys' fees." [Claim No. 186] Therefore, the Proof of Claim relates to the outcome of the Adversary Proceeding because if the Veldekens lose the Adversary Proceeding, their claim in the Main Case will be reduced and any interest that they assert in the Tidwell Property will be extinguished.

sult of a final adjudication, bear directly upon the claim filed in the Main Case for future rent: if the Veldekens do not own the Tidwell Property, they will have no claim for future rents. Thus, the filing of the Veldekens' proof of claim in the Main Case operates as a waiver of their right to a jury trial in the Adversary Proceeding.

In the alternative, if the District Court finds that the Veldekens still have a valid right to demand a jury trial, the District Court should "specially designate" this Court to conduct the jury trial because the parties have already given their consent. Bankruptcy courts can be authorized by the District Court to conduct a jury trial, with consent of both parties, under 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.").

On October 14, 2005, the Veldekens and GE filed in the District Court the Agreed Motion for Referral of the suit to this Court. [Docket No. 104, Ex. A.] The Agreed Motion for Referral states that "[t]he parties agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final orders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court." *Id.* The scope of consent in the Motion is broad enough to encompass the required consent to jury trial in 28 U.S.C. § 157(e).

First, the Agreed Motion for Referral does not specify that the parties' consent is limited to any single subsection of 28 U.S.C. § 157. Second, the entry of a final order or judgment would not exclude this

Bankruptcy Court from conducting a jury trial. Finally, the District Court should look at the Veldekens' actions and inaction since initially making a demand for a jury trial to this Court in their First Amended Complaint. The Veldekens did not immediately seek to have the Referral Order withdrawn so that they could receive a jury trial in the District Court. Instead, they delayed for seven months and allowed this Court and the Defendants to believe that this Adversary Proceeding would be adjudicated in this Court. Although 28 U.S.C. § 157(e) requires "express consent," the District Court should find that the Veldekens consented to this Court conducting a jury trial based on their representation of consent in the Agreed Motion for Referral and their inaction since making a demand for a jury trial to this Court. Thus, since the parties have consented to this Court conducting a jury trial, the District Court should "specially designate" this Court to do so because of this Court's level of familiarity with the facts and issues in this case.

Under the circumstances discussed above, the sixth *Holland America* factor weighs against a withdrawal of the Referral Order.

## V. CONCLUSION

All six of the *Holland America* factors weigh in favor of denying the withdrawal of the Referral Order. Even if the Adversary Proceeding is not classified as core because it involves liens on property of the reorganized Debtor, the considerable weight given to the other five factors would still result in a recommendation in favor of denying withdrawal. Indeed, the single most important *Holland America* factor in this matter is the blatant forum shopping. Even if more than one of the other *Holland America* factors actually favored a withdrawal of the Referral Order,

the eleventh-hour attempt to forum shop, and all the additional attorneys' fees and time that would be associated with another court adjudicating this suit, weigh heavily in favor of denying withdrawal of the Referral Order. For these reasons, this Court recommends that the District Court deny the Motion to Withdraw the Referral Order.